1  Jordan Susman, Esq. (SBN 246116)
   jsusman@nolanheimann.com
2  Margo Arnold, Esq. (SBN 278288)
3  marnold@nolanheimann.com
   NOLAN HEIMANN LLP
4  16000 Ventura Boulevard, Suite 1200
5  Encino, California 91436
   Telephone: (818) 574-5710
6  Facsimile: (818) 574-5689

7
   Attorneys for Defendants
8  Smosh Dot Com, Inc. d/b/a Smosh,
9  and Mythical Entertainment, LLC

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KRISTEN HALL, *on behalf of herself* and *all others similarly situated*,<br><br>Plaintiff,<br><br>vs.<br><br>SMOSH DOT COM, INC. d/b/a SMOSH, and MYTHICAL ENTERTAINMENT, LLC,<br><br>Defendants. | Case No.: 2:21-cv-01997-JAM-AC<br><br>**DEFENDANTS' MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**<br><br>Date: April 5, 2022<br>Time: 1:30 p.m.<br>Courtroom: 6 |

-1-

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on April 5, 2022, at 1:30 p.m., or as soon thereafter as may be heard by the above-entitled court, located in Courtroom 6 at Robert T. Matsui United States Courthouse, 501 I Street, Sacramento, California 95814, defendants Smosh Dot Com, Inc. and Mythical Entertainment, Inc. (collectively, "Defendants") will and hereby do move this Court for an order pursuant to Federal Rule of Civil Procedure 12(b)(6) dismissing the First Amended Complaint ("FAC") filed by Plaintiff Kristen Hall.

The Motion is based upon the grounds that the FAC fails to state facts sufficient to constitute any claim against the Defendants.

The Motion is based on this Notice of Motion and Motion; the attached Memorandum of Point and Authorities; the Declaration of Jordan Susman, and the [Proposed] Order filed concurrently herewith; other matters for which the Court may take judicial notice; the pleadings, papers, and records on file herein; and upon such oral and/or documentary evidence as may presented to the Court at the time of the hearing of this Motion.

PLEASE TAKE FURTHER NOTICE THAT, pursuant to Local Rule and 230(c), any opposition to this Motion shall be in writing and filed and served not less than fourteen (14) days preceding the noticed hearing date. No party will be entitled to be heard in opposition to a motion at oral arguments if opposition to the motion has not been timely filed by that party. See L.R. 135. A failure to file a timely opposition may also be construed by the Court as a non-opposition to the Motion.

//
//
//

-1-

DEFENDANTS' MOTION TO DISMISS

WHEREFORE, Defendants hereby request that the Court enter an order:

A.  Dismissing the FAC; and

B.  Awarding any and all such other relief as this Court deems proper.

Dated: February 1, 2022          NOLAN HEIMANN LLP

By: _____
Jordan Susman
Attorneys for Defendants
Smosh Dot Com, Inc. d/b/a Smosh,
and Mythical Entertainment, LLC

## MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Smosh Dot Com, Inc. d/b/a Smosh, and Mythical Entertainment, LLC (collectively "Defendants") respectfully request that dismiss Plaintiff Kristen Hall's First Amended Complaint ("FAC") with prejudice.

**I.    INTRODUCTION AND STATEMENT OF FACTS**

Like many parents, Plaintiff Kristin Hall ("Plaintiff") gave her teenage son a cellular phone so he could stay in contact with his parents. Like many teenagers, Plaintiff's son used his cell phone for his own personal activities. For instance, Plaintiff's son provided his cell phone number, which ends in 0669 (the "Number"), to Defendants, who own the retail website https://smosh.com, so he could receive inventory updates and promotional text messages.

As a result of Plaintiff's son *opting in* to receive messages from Defendants, between December 25, 2019, and June 29, 2020, the Number purportedly received five text messages announcing sales or new merchandise at https://smosh.com. FAC ¶ 34.

Once Plaintiff found out about her son's cell phone activities, she did not respond to Defendants' messages with "STOP," which would have removed the Number from the Defendants' text message list as specifically set forth and easily discoverable in the Defendants' Terms and Conditions that were accepted by opting in to the service. Instead, Plaintiff hired a law firm that brags it can turn unwanted communications into "significant monetary compensation" and sought to turn the five text messages that were *solicited by her son* into a five-figure settlement. Susman Decl. ¶¶ 2, 6 Exs. A, E.

On August 6, 2021, more than one year after the Number purportedly received

-3-

1  the last text message, Plaintiff sent Defendants a demand letter, claiming that
2  Defendants had violated the Telephone Consumer Protection Act (the "TCPA") 47
3  U.S.C. 227, and demanding payment by Defendants.  Susman Decl. ¶ 2 Ex. A.
4      On September 1, 2021, Defendants responded to Plaintiff's demand letter. *Id*.
5  ¶ 3 Ex. B, p. 6. Defendants informed Plaintiff that Defendants only send text
6  messages to consumers who expressly "opt-in" to receive such advertising and
7  stated Defendants' willingness to block any future communications. *Id*.
8      On September 2, 2021, Plaintiff responded to Defendants and acknowledged
9  that "consent is a defense" to TCPA claims. *Id*. ¶ 3 Ex. B, p. 5.
10     On September 9, 2021, Defendants informed Plaintiff that Defendants have no
11 record of Plaintiff in their records. *Id*. ¶ 3 Ex. B, p. 4.
12     Only then, did Plaintiff finally provide Defendants with the Number. *Id*. ¶ 3
13 Ex. B, p. 3.
14     Upon receiving the Number, on September 9, 2021, Defendants immediately
15 informed Plaintiff that E*** Howsley had signed up to receive text messages on
16 November 3, 2019, and produced written evidence of same. *Id*.
17     Upon receipt of this information, Plaintiff was forced to admit that E***
18 Howsley was, in fact, Plaintiff's son and the primary user of the Number. *Id*. ¶ 3 Ex.
19 B, p. 2.
20     Notwithstanding Defendants' indisputable evidence that Plaintiff's son had
21 opted-in to receive promotional text message communications, and notwithstanding
22 Plaintiff's admission that "consent is a defense," Plaintiff filed the instant lawsuit.
23     In the FAC, Plaintiff omitted certain critical facts and manipulated other facts
24 to make it appear that Plaintiff's son was not the user of the Number and did not sign
25 up to receive text messages, when, in fact, he did. However, no amount of ribbon

and glue can hold together Plaintiff's claims. The specifically pleaded allegations in the FAC, coupled with the communications between Plaintiff's counsel and Defendants, some of which are attached to the FAC, do not state valid claims for relief.

The FAC's first two claims for violation of the TCPA fail as a matter of law for several independent reasons:

- Plaintiff does not have standing to bring this lawsuit because it was her son, and not Plaintiff, who purportedly received the text messages;
- The actual user of the Number, Plaintiff's son, provided Defendants with express, written consent to send the Number promotional text messages;
- Defendants did not use an automated dialer to send the text messages.

The FAC similarly fails to state a viable claim for violation of Texas Business and Commerce Code section 302.101 *et seq*. ("TBCC § 302.101"), because Defendants fall within an exception to the statute, as they have operated for more than two years a retail establishment where consumer goods are displayed and offered for sale continuously. Tex. Bus. & Comm. Code § 302.059.

In sum, the FAC is not merely frivolous, but without any factual basis and should be dismissed with prejudice.

## II. **PLAINTIFF LACKS ARTICLE III STANDING**

Before addressing the merits of Plaintiff's claims, the Court must first determine if Plaintiff has standing. Article III standing requires that a plaintiff "have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). It is readily apparent from the

face of the FAC that Plaintiff lacks standing.

"The TCPA establishes the substantive right to be free from certain types of phone calls and texts absent consumer consent." *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) (citing *Spokeo*, *Inc. v. Robins*, 578 U.S. 330, 338 (2016)). "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude *of their recipients*." *Id*. (emphasis added). Courts have repeatedly held that the "called party" language of the TCPA means the actual recipient of the call (or in this case, the text messages) and not the owner or intended recipient. *See Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1321 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014) (collecting cases).

Although Plaintiff claims in the FAC that she is the "owner" of the Number and as the "owner" she allegedly found the text messages "irritating, exploitative and invasive," **Plaintiff fails to plead that she ever used the Number or received any of the alleged messages from Defendants**. FAC, ¶ 37. In fact, the FAC admits that Plaintiff's son was the "user" of the Number. FAC, ¶ 26.

Plaintiff's desperate efforts to downplay Plaintiff's son's use of the Number are contradicted by Plaintiff's earlier admission that Plaintiff gave her son the cell phone for the purpose of maintaining contact with her and her son's father. Susman Decl. ¶ 3 Ex. B, p.2 ("She gave him a cell phone for E*** to stay in contact with her and his father only."). Consequently, Plaintiff's claims fail as a matter of law, as she is not a proper plaintiff to this action.

### III. LEGAL STANDARD APPLICABLE TO RULE 12(B)(6)

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. While the

1  Court's "inquiry is limited to the allegations in the complaint, which are accepted as
2  true and construed in the light most favorable to the plaintiff," (*Lazy Y Ranch LTD
3  v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008)), it may also utilize documents
4  submitted as part of the complaint and documents whose contents are alleged in the
5  complaint. *See Informix Software, Inc. v. Oracle Corp.*, 927 F. Supp. 1283, 1285
6  (N.D. Cal. 1996) ("[D]ocuments whose contents are alleged in a complaint, and
7  whose authenticity no party questions, but which are not physically attached to the
8  pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss.").

9      The FAC referenced cherry-picked pre-litigation communications between
10 Plaintiff's and Defendants' counsel. Accordingly, all of the written pre-litigation
11 communications between Plaintiff's and Defendant's counsel may be considered in
12 deciding this motion. *See Fowlkes v. Rodriguez*, 584 F. Supp. 2d 561 (E.D.N.Y.
13 2008) ("The court may also consider documents or information in defendant's
14 motion papers if plaintiff has knowledge or possession of the material and relied on
15 it in framing the complaint."); *Hapin v. Arrow Financial Services*, 428 F. Supp. 2d
16 1057 (N.D. Cal. 2006) (internal quotes and citations omitted) ("district court may
17 consider the full texts of documents that the complaint only quotes in part. This rule
18 precludes plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting
19 references to documents upon which their claims are based.").

20     While the pleading standard of Federal Rule of Civil Procedure 8(a)(2) is
21 liberal, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to
22 relief' requires more than labels and conclusions, and a formulaic recitation of the
23 elements of a cause of action will not do." *Bell At. Corp. v. Twombly*, 550 U.S. 544,
24 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

25     Per *Twombly*, a plaintiff must not merely allege conduct that is conceivable

but must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

The FAC has not, and cannot, meet these burdens.

## IV. THE FAC DOES NOT STATE A CLAIM FOR VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227(B)

The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). A text message is a "call" within the meaning of this statute. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009).

Here, Plaintiff's first TCPA claim fails because Defendants (i) did not use an autodialer to communicate with the Number and (ii) Defendants received express consent from the Number's user to send promotional text messages.

### A. Defendants Did Not Contact the Number Using An Automatic Telephone Dialing System ("ATDS")

In *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021), the Supreme Court held that "the TCPA's autodialer definition excludes equipment that does not use a random or sequential number generator." *Id.* at 1164. Consequently, autodialers that merely store and dial telephone numbers do not violate the TCPA. *Id.* at 1171 ("Expanding the definition of an autodialer to encompass any equipment that merely stores and dials telephone numbers would take a chainsaw" to the TCPA's definition

-8-

of autodialer "when Congress meant to use a scalpel."). The Court's decision merely codified what earlier lower courts had already held. *See e.g., Hulsey v. Peddle, LLC*, No. CV 17-3843 DSF (ASX), 2017 WL 8180583, at *2 (C.D. Cal. Oct. 23, 2017) ("Peddle's texts were sent *after* Hulsey provided her phone number on the Junk Car Zone website, which suggests 'direct targeting that is inconsistent with the sort of random or sequential number generation required for an ATDS.'"); *Epps v. Earth Fare, Inc.*, 2017 WL 1424637, at *6 (C.D. Cal. Feb. 27, 2017) (collecting cases); *Weisberg v. Stripe, Inc.*, 2016 WL 3971296, at *3 (N.D. Cal. July 25, 2016); *Ibey v. Taco Bell Corp.*, 2012 WL 2401972, at *3 (S.D. Cal. June 18, 2012) (granting defendant's motion to dismiss where the text message at issue "did not appear to be random but in direct response to Plaintiff's message"). And in a subsequent decision, a court in the Central District of California dismissed a complaint on the basis that it "fail[ed] to allege Defendant randomly or sequentially generated [plaintiff's] phone number." *Franco v. Alorica Inc*, No. 220CV05035DOCKESX, 2021 WL 3812872, at *3 (C.D. Cal. July 27, 2021).

Here, **the Number was not randomly generated, but was given to Defendants by Plaintiff's son**. And although the FAC alleges that Defendants used an automatic telephone dialer (FAC ¶ 66), that allegation is contradicted by Plaintiff's admission elsewhere in the FAC that Defendants obtained the Number from Plaintiff's son on November 3, 2019 and did not send him any messages until December 25, 2019. (FAC, ¶ 31, 34). Further, Plaintiff admits that Defendants obtained the Number from someone who opted in to receive messages. FAC ¶ 41.

Consequently, the FAC fails to state a violation of the TCPA. As the court in *Franco* held: "When a defendant randomly makes calls from a curated list, it is not randomly or sequentially generating phone numbers. Therefore, under the Supreme

-9-

Court's definition of an ATDS announced in *Facebook*—equipment that 'uses a random or sequential number generator'—that defendant is not using an ATDS and cannot be liable under § 227 of the TCPA." *Franco*, 2021 WL 3812872, at *3.

For this reason alone, the Court should dismiss the first claim.

### B. Defendants Received Consent From the Number's User to Send the Text Messages

The TCPA only prohibits unwanted communications. *Van Patten*, 847 F.3d at 1047 ("the TCPA is a remedial statute intended to protect consumers from unwanted automated telephone calls and messages"). Text messages sent to a consenting consumer cannot give rise to TCPA claims. 47 U.S.C. § 227(b)(1)(A)(iii).

As discussed above, the FAC admits that Defendants obtained the Number from someone who opted in to receive messages.  FAC ¶ 41. This fact is further evidenced by pre-litigation communications between Plaintiff's and Defendants' counsel, portions of which Plaintiff attached as Exhibit B to the FAC, Plaintiff's son signed up online to receive promotional text messages on November 3, 2019. *See also* Susman Decl. ¶ 3 Ex. B, p.3.

Despite being under the age of majority, Plaintiff's teenage son was capable of consenting to receive text messages from Defendants. The law in Texas, where Plaintiff and her son reside, is clear: minors may enter into contracts without parental consent and such contracts can be invalidated based on the minor's age at the minor's election. *Mr. W Fireworks, Inc.* v. Ozuna, No. 04-08-00820-CV, 2009 WL 3464856, at *6 (Tex. App. Oct. 28, 2009) ("**when a minor enters into a contract, that contract is not void**, but is voidable at the election of the minor"); *Dairyland Cty. Mut. Ins. Co. of Texas v. Roman*, 498 S.W.2d 154, 158 (Tex. 1973) ("While the contract of a minor is not void, it is voidable at the election of the

minor. This means that the minor may set aside the entire contract at his option, but he is not entitled to enforce portions that are favorable to him and at the same time disaffirm other provisions that he finds burdensome."); *In re B.W.,* 313 S.W.3d 818, 823 (Tex. 2010) ("[A] minor's contracts are voidable at the minor's election, even if the minor knew what he or she was doing and innocent people are prejudiced.").

Here, Plaintiff's son consented to receive message from Defendants and never sought to rescind his consent. Therefore, every text message sent to the Number was sent with express written consent, and Plaintiff's claim fails as a matter of law.

## V. THE FAC DOES NOT STATE A CLAIM FOR VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227(c)(5)

Section 227(c)(5) of the TCPA allows a private right of action for "a person who has received more than one telephone call within any 12-month period by or on behalf of the same entity" in violation of the prescribed regulations. 47 U.S.C. § 227(c)(5). Section 227(c) is titled "Protection of subscriber privacy rights" but specifically addresses the position of "residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." *Id.* § 227(c)(5).

Plaintiff's TCPA 47 U.S.C. § 227(c)(5) claim fails for two reasons: (i) Defendants had express consent to contract the Number and (ii) the Number was connected to a cell phone.

### A. Defendants Had Express Written Consent From the Number's User to Send the Text Messages

As discussed *supra*, Defendants received express written consent from the Number's user—Plaintiff's teenage son—to send text messages. As such, Plaintiff's second TCPA claim fails as a matter of law and should be dismissed.

-11-
DEFENDANTS' MOTION TO DISMISS

### B. The Number is Not a Residential Number

Plaintiff's second TCPA claim also fails because 47 U.S.C. § 227(c)(5) only applies to residential telephone numbers. *Barton v. Temescal Wellness, LLC*, 525 F. Supp. 3d 195, 201 (D. Mass.) ("Under the TCPA, only residential phone subscribers are entitled to Do Not Call protections.").

Here, the FAC alleges that the Number was a cell phone number (FAC ¶¶ 25, 27) and therefore cannot be the basis for a claim under 47 U.S.C. § 227(c)(5) claim. In an effort to obtain Do Not Call protections, however, Plaintiff alleges that the cell phone at issue was "primarily used for residential purposes" (FAC ¶ 27). This allegation is contradicted by Plaintiff's earlier admission that she gave her son the cell phone for the purpose of maintaining contact with her and her son's father. Susman Decl. ¶ 3 Ex. B, p.2 ("She gave him a cell phone for E*** to stay in contact with her and his father only."). Because the Number was a cell phone used by Plaintiff's son primarily to stay in contact with the son's parents, it is not a residential line, and Plaintiff's Do Not Call claim fails as a matter of law.

## VI. THE FAC DOES NOT STATE A CLAIM FOR VIOLATIONS OF TEXAS BUSINESS AND COMMERCE CODE SEC. 302.101

The TBCC § 302.101 prohibits a seller from making a telephone solicitation unless the seller holds a registration certificate for the business location from which the telephone solicitation is made. There are numerous exemptions to the statute, including (1) an exemption for sellers of consumer goods who, for at least two years, have operated a retail establishment where consumer goods are displayed and offered for sale continuously, and the majority of the seller's business involves buyers obtaining services or products at the retail establishment (Tex. Bus. & Comm. Code § 302.059), and (2) sellers who solicit business from former or current

customers (*Id*. § 302.58).

As an initial matter, it is indisputable that Defendants have operated an online retail establishment since at least January 1, 2016—more than two years before the first text message was purportedly sent to Plaintiff.  Susman Decl. ¶ 5 Ex. D.  In fact, the text messages sent to the Number contained links to Defendants' online retail establishment because purchases could only be made through the website. (FAC, Ex. A.).

It is equally indisputable that Defendants' purported solicitations were made to a then-current customer, as Defendants received written consent from the Number's user to send text messages. As such, Plaintiff's claim fails as a matter of law.

## VII. CONCLUSION

For the foregoing reasons, the Court should grant Defendants' Motion to Dismiss with prejudice.

Dated: February 1, 2022                    NOLAN HEIMANN LLP

                                           By: _____
                                           Jordan Susman
                                           Attorneys for Defendants
                                           Smosh Dot Com, Inc. d/b/a Smosh,
                                           and Mythical Entertainment, LLC