MANATT, PHELPS & PHILLIPS, LLP
ALEXANDRA N. KRASOVEC (SBN 279578)
Email: AKrasovec@manatt.com
CODY A. DeCAMP (SBN 311327)
Email: CDeCamp@manatt.com
MARAH A. BRAGDON (SBN 342646)
2049 Century Park East, Suite 1700
Los Angeles, California 90067
Telephone: (310) 312-4000
Facsimile: (310) 312-4224

Attorneys for Defendant
SMOSH PRODUCTIONS, INC., MYTHICAL
ENTERTAINMENT, LLC and MYTHICAL
VENTURE, INC. d/b/a "Smosh"

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| KRISTEN HALL,<br><br>    Plaintiff,<br><br>    v.<br><br>SMOSH PRODUCTIONS, INC., MYTHICAL ENTERTAINMENT, LLC and MYTHICAL VENTURE, INC. d/b/a "Smosh",<br><br>    Defendants. | Case No. 2:21-CV-01997-DAD-AC<br><br>Hon. Dale A. Drozd<br><br>**DEFENDANTS SMOSH PRODUCTIONS, INC., MYTHICAL ENTERTAINMENT, LLC AND MYTHICAL VENTURE, INC. D/B/A "SMOSH" NOTICE OF MOTION AND MOTION TO DISMISS THE SECOND AMENDED COMPLAINT UNDER FED. R. CIV. P. 8, 10, 12(b)(6) AND/OR STRIKE CLASS ALLEGATIONS UNDER FED. R. CIV. P. 12(f) AND 23; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:        December 19, 2023<br>Time:        1:30 p.m.<br>Courtroom:  4, 15th Floor<br><br>Date Filed: October 28, 2021 |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD**:

PLEASE TAKE NOTICE that on December 19, 2023 at 1:30 p.m. in Courtroom 4 of this Court, Defendants Smosh Productions, Inc. ("Smosh Productions"), Mythical Entertainment, LLC ("Mythical Entertainment") and Mythical Venture, Inc. d/b/a "Smosh" ("Mythical Venture") (collectively, "Defendants") will and hereby do move under Rules 8, 10, and 12(b)(6) to dismiss Plaintiff Kristen Hall's ("Plaintiff") Second Amended Complaint ("SAC").

Defendants move to dismiss the claims as to all Defendants under Rules 8 and 10 on the grounds that the SAC constitutes a shotgun pleading that does not provide adequate notice of what each Defendants' role in the alleged wrongdoing is. Defendants also move to dismiss both of Plaintiff's claims for failure to state a claim under Rule 12(b)(6). First, Plaintiff fails to adequately allege that any of the Defendants physically sent the text messages at-issue, and therefore fails to establish that any Defendant is directly liable for these messages, as required to pursue a direct liability TCPA claim. Second, Plaintiff fails to allege vicarious liability, as she does not allege that any of the Defendants exercised the requisite level of control over any of the other Defendants in sending the at-issue texts. Mythical Entertainment, the alleged parent of Mythical Venture, also separately moves to dismiss on the grounds that the SAC contains no allegations attributing any wrongful conduct to it, and merely seeks to hold it liable as a corporate parent.

Plaintiff's claims are also subject to dismissal as a matter of law based upon the pleadings. Plaintiff does not dispute that her child provided their prior express invitation or permission to be contacted at Plaintiff's phone number, thus the text messages here were not unsolicited. While prior express invitation or permission can be an affirmative defense to TCPA claims, it can properly serve as a basis to dismiss where it appears on the face of the complaint. Plaintiff's Texas Business & Commercial Code claims, applicable to "telephone calls," should also be dismissed

because federal courts in Texas analyzing the statute have determined that it does not apply to text messages—the communication method at issue here.

Alternatively, should the Court decide not to dismiss the Complaint in whole or in part for any reason, Defendants respectfully move to strike Plaintiff's class allegations under Fed. R. Civ. P. 12(f) and/or 23. This remedy is appropriate here given that Plaintiff's lack of typicality is readily apparent on the face of the SAC. Plaintiff's circumstances are so unique and atypical that she cannot serve as a class representative in this action, and further evidence that individualized issues abound.

This Motion is based on this Notice of Motion and Motion, the incorporated Memorandum of Points and Authorities below, all papers on file herein, all matters subject to judicial notice, and any argument or evidence that may be presented to or considered by the Court prior to ruling.

This Motion is made following the conferences of counsel pursuant to Section I.C of the Court's standing order, which took place via telephone calls on October 6, 2023, and October 23, 2023. The parties were unable to reach an agreement thereon and, as such, this Motion is opposed.

Dated: October 23, 2023        MANATT, PHELPS & PHILLIPS, LLP

By: /s/Alexandra N. Krasovec
    Alexandra N. Krasovec
    Cody A. DeCamp
    Marah A. Bragdon
    Attorneys for Defendants
    Smosh Productions, Inc., Mythical
    Entertainment, LLC and Mythical Venture,
    Inc. d/b/a "Smosh"

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ....................................................................................... 1

II.    PLAINTIFF'S ALLEGATIONS ................................................................. 2

III.   LEGAL STANDARD ................................................................................. 3

      A.    Fed. R. Civ. P. 8 and 10: Shotgun Pleading............................................ 3

      B.    Fed. R. Civ. P. 12(b)(6): Failure to State a Claim for Relief.................. 3

      C.    Fed. R. Civ. P. 12(f) and 23: Striking Improper Class Allegations. ........................................................................................... 4

IV.   ARGUMENT ............................................................................................. 4

      A.    The SAC Constitutes an Impermissible Shotgun Pleading that Lumps Defendants Together and is Thus Subject to Dismissal. .......... 4

      B.    The SAC Fails to Allege Direct Liability Against Any Defendant. ............................................................................................ 6

           1.    The SAC Fails to Plausibly Allege that Mythical Venture Sent the At-Issue Texts. ..................................................... 7

           2.    The SAC Fails to Allege Any Facts Showing that Smosh Productions or Mythical Entertainment Sent the At-Issue Texts........................................................................................ 8

      C.    The SAC Fails to Allege Vicarious Liability Against Any Defendant. ............................................................................................ 9

           1.    The SAC Fails to Plausibly Allege that Any Defendant Had Actual Authority over Any Other Defendant's Alleged Sending of the Texts. ...................................................... 10

           2.    The SAC Also Fails to Plausibly Allege Apparent Authority on the Part of Any Defendant Over Any Other. ....... 10

           3.    The SAC Likewise Fails to Plausibly Allege Ratification by Any Defendant For the Acts of Another. .............................. 11

      D.    Mythical Entertainment is Not Liable as a Parent Company for the Alleged Actions of Mythical Venture.......................................... 11

           1.    Plaintiff Has Not Pled a Unity of Interests Between Mythical Entertainment and Mythical Venture....................... 13

           2.    Plaintiff Has Not Alleged Any Fraud or Injustice that Would Flow from Failing to Respect Defendants' Corporate Forms. ...................................................................... 14

      E.    Plaintiff's Claims Based on Texas State Law are Not Applicable to Text Message Communications................................................... 15

      F.    Plaintiff's Class Claims Should be Stricken on the Pleadings. ........... 16

           1.    Plaintiff's Texas Business & Commercial Code Class Should be Stricken.................................................................. 16

           2.    Plaintiff's TCPA DNC Subclass Should be Stricken................. 17

V.    THE SAC SHOULD BE DISMISSED WITH PREJUDICE ....................... 19

i

1

## TABLE OF CONTENTS
(continued)

2

**Page**

3    VI.    CONCLUSION ............................................................................... 19

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

## CASES

*Aaronson v. CHW Grp., Inc.*,
  2019 WL 8953349 (E.D. Va. Apr. 15, 2019)........................................8

*Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.*,
  2018 WL 3707283 (N.D. Cal. Aug. 3, 2018)........................................9

*Apple Inc. v. Allan & Assocs. Ltd.*,
  445 F. Supp. 3d 42 (N.D. Cal. 2020)..............................................14

*Armstrong v. Investor's Bus. Daily, Inc.*,
  2018 WL 6787049 (C.D. Cal. Dec. 21, 2018)......................................6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..............................................................3

*Balistreri v. Pacifica Police Dep't.*,
  901 F.2d 696 (9th Cir. 1990) ....................................................3

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..............................................................3

*Briskin v. Shopify Inc.*,
  2022 WL 1427324 (N.D. Cal. May 5, 2022) ........................................5

*Camunas v. Nat'l Republican Senatorial Comm.*,
  541 F. Supp. 3d 595 (E.D. Pa. 2021).............................................7

*Canary v. Youngevity Int'l, Inc.*,
  2019 WL 1275343 (N.D. Cal. Mar. 20, 2019) ..................................10, 12

*Carrillo v. NewRez LLC*,
  2023 WL 5498885 (C.D. Cal. July 20, 2023) ......................................3

*Dixon v. Monterey Fin. Servs., Inc.*,
  2016 WL 4426908 (N.D. Cal. Aug. 22, 2016) ......................................4

*Doyle v. GoHealth, LLC*,
  2023 WL 3984951 (D.N.J. Mar. 30, 2023) .........................................7

*Ewing v. GoNow Travel Club, LLC*,
  2019 WL 3253058 (S.D. Cal. July 19, 2019).......................................5

*Flores v. EMC Mortg. Co.*,
  997 F. Supp. 2d 1088 (E.D. Cal. 2014)...........................................4

# TABLE OF AUTHORITIES
(continued)

                                                                                    **Page**

*Frame v. Cal-W. Reconveyance Corp.*,
    2011 WL 3876012 (D. Ariz. Sept. 2, 2011) ........................................................ 19

*Hall v. Smosh Dot Com, Inc.*,
    72 F.4th 983 (9th Cir. 2023) .................................................................................. 1

*Hamilton v. El Moussa*,
    2020 WL 2614625 (C.D. Cal. Feb. 10, 2020) ....................................................... 5

*Holland v. Related Companies, L.P.*,
    2017 WL 11651046 (N.D. Cal. Mar. 1, 2017) ............................................... 12, 13

*Hsieh v. FCA US LLC*,
    440 F. Supp. 3d 1157 (S.D. Cal. 2020) ................................................................. 3

*I.B. ex rel. Fife v. Facebook, Inc.*,
    905 F. Supp. 2d 989 (N.D. Cal. 2012) ................................................................. 18

*Imber-Gluck v. Google, Inc.*,
    2014 WL 3600506 (N.D. Cal. July 21, 2014) ..................................................... 18

*In re iPhone Application Litig.*,
    2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) ..................................................... 5

*In re Joint Petition filed by Dish Network, LLC*,
    28 FCC Rcd. 6574 (2013) ...................................................................................... 6

*In re Wal-Mart Stores, Inc. Wage & Hour Litig.*,
    505 F. Supp. 2d 609 (N.D. Cal. 2007) ................................................................. 16

*Jain v. Tesla Inc.*,
    2022 WL 20611265 (N.D. Cal. Oct. 12, 2022) ................................................... 18

*Jenkins v. Nat'l Grid USA*,
    2016 WL 11800166 (E.D.N.Y. Mar. 31, 2016) ................................................... 12

*Jones v. Royal Admin. Servs., Inc.*,
    887 F.3d 443 (9th Cir. 2018) ............................................................................ 9, 11

*Kamm v. California City Dev. Co.*,
    509 F.2d 205 (9th Cir. 1975) ............................................................................... 16

*Katz v. Caliber Home Loans, Inc.*,
    2023 WL 5311488 (N.D. Tex. Aug. 17, 2023) ..................................................... 6

*Katzir's Floor and Home Design, Inc. v. M-MLS.com*,
    394 F.3d 1143 (9th Cir.2004) .............................................................................. 12

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Kristensen v. Credit Payment Servs.*,
   12 F. Supp. 3d 1292 (D. Nev. 2014) ...................................................................... 9

*Langan v. United Svcs. Auto. Assoc.*,
   69 F. Supp. 3d 965 (N.D. Cal. 2014)...................................................................... 4

*Linlor v. Five9, Inc.*,
   2017 WL 2972447 (S.D. Cal. July 12, 2017).............................................. 10, 11

*Lith v. Iheartmedia + Ent., Inc.*,
   2016 WL 4000356 (E.D. Cal. July 25, 2016)......................................................... 4

*Meeks v. Buffalo Wild Wings, Inc.*,
   2018 WL 1524067 (N.D. Cal. Mar. 28, 2018) ...................................................... 8

*Naiman v. TranzVia LLC*,
   2017 WL 5992123 (N.D. Cal. Dec. 4, 2017) ...................................................... 10

*Pascal v. Agentra, LLC*,
   2019 WL 5212961 (N.D. Cal. Oct. 16, 2019)..................................................... 11

*Payoda, Inc. v. Photon Infotech, Inc.*,
   2015 WL 4593911 (N.D. Cal. July 30, 2015) ..................................................... 13

*Pepper v. GVG Cap. LLC*,
   2023 WL 205297 (S.D. Tex. Jan. 17, 2023) ................................................ 15, 16

*Powers v. One Techs., LLC*,
   2022 WL 2992881 (N.D. Tex. July 28, 2022) ............................................. 15, 16

*Qwest Commc'ns Corp. v. Herakles, LLC*,
   2008 WL 783343 (E.D. Cal. Mar. 20, 2008)...............................................12, 13, 14

*Ranza v. Nike, Inc.*,
   793 F.3d 1059 (9th Cir. 2015)............................................................................. 12

*Reddy v. Litton Indus., Inc.*,
   912 F.2d 291 (9th Cir. 1990) ................................................................................ 2

*Reyes v. Educ. Credit Mgmt. Corp.*,
   773 F. App'x 989 (9th Cir. 2019) ...................................................................... 17

*Rogers v. Postmates Inc.*,
   2020 WL 3869191 (N.D. Cal. July 9, 2020) ................................................. 6, 10

*Sarmiento v. Marquez*,
   2022 WL 2918906 (N.D. Cal. July 25, 2022) ...................................................... 5

1

2

**TABLE OF AUTHORITIES**
(continued)

**Page**

3

*Shcherb v. Angi Homeservices Inc.*,

4
  2020 WL 2571041 (S.D.N.Y. May 21, 2020)......................................................12

5
*Sheski v. Shopify (USA) Inc.*,
  2020 WL 2474421 (N.D. Cal. May 13, 2020)....................................................... 6

6
*Stark v. Stall*,

7
  2020 WL 13158003 (S.D. Cal. Aug. 20, 2020) ...............................................9, 11

8
*Stokes v. CitiMortgage, Inc.*,
  2015 WL 709201 (C.D. Cal. Jan. 16, 2015)......................................................... 4

9

*Tomaszewski v. Circle K Stores Inc.*,

10
  2021 WL 2661190 (D. Ariz. Jan. 12, 2021).......................................................18

11
*United States v. Bestfoods*,

12
  524 U.S. 51 (1998) ...........................................................................................11

13
*Virtualmagic Asia, Inc. v. Fil-Cartoons, Inc.*,
  99 Cal. App. 4th 228 (2002)..............................................................................14

14

*Whittlestone, Inc. v. Handi–Craft Co.*,

15
  618 F.3d 970 (9th Cir. 2010) .............................................................................. 4

16
*Wick v. Twilio Inc.*,
  2017 WL 2964855 (W.D. Wash. July 12, 2017).................................................... 7

17

*Wright v. Fam. Dollar, Inc.*,

18
  2010 WL 4962838 (N.D. Ill. Nov. 30, 2010).....................................................16

19
*XR Commc'ns, LLC v. Ruckus Wireless, Inc.*,

20
  2018 WL 3156851 (C.D. Cal. Mar. 30, 2018) ..............................................13, 14

21
*Yagman v. Allianz Ins.*,
  2015 WL 5553460 (C.D. Cal. May 11, 2015)....................................................... 4

22

*Zarichny v. Complete Payment Recovery Servs., Inc.*,

23
  80 F. Supp. 3d 610 (E.D. Pa. 2015)....................................................................12

24

**STATUTES**

25
Tex. Bus. & Com. Code § 302.001 .......................................................................15

26

**OTHER AUTHORITIES**

27
Restatement (Third) of Agency ................................................................................. 9

28

**RULES**

Fed. R. Civ. P. 8(a) ................................................................................................. 3

# TABLE OF AUTHORITIES
### (continued)

**Page**

Fed. R. Civ. P. 8(d)(1) ............................................................................................ 3

Fed. R. Civ. P. 10(b) .............................................................................................. 3

Fed. R. Civ. P. 12(f) .............................................................................................. 4

Fed. R. Civ. P. 23(a)(2) ........................................................................................ 17

Fed. R. Civ. P. 23(a)(3) ........................................................................................ 18

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This case tees up a novel issue: When a cell phone is shared between multiple users, and one of those users provides their prior express invitation or permission to be contacted at that number, can the other user still maintain a claim under the TCPA's Do-Not-Call Registry provisions? However interesting this question may be, the Court need not reach it because Plaintiff Kristen Hall's ("Plaintiff") Second Amended Complaint ("SAC," Dkt. 58) is so inadequately pled that she fails to state even a shape of a claim against any of the Defendants, Smosh Productions, Inc. ("Smosh Productions"), Mythical Entertainment, LLC ("Mythical Entertainment"), and/or Mythical Venture, Inc. d/b/a Smosh ("Mythical Venture") (collectively, "Defendants"). At bottom, the SAC is a shotgun pleading that fails to identify who even did what to cause the purported harm to Plaintiff[1], let alone present factual allegations sufficient to support TCPA liability against any of these Defendants. Likewise, Plaintiff's Texas state claim does not apply to text messages, and she cannot recover on this basis. Accordingly, the SAC—which is Plaintiff's ***third*** attempt to plead her case—should be dismissed in its entirety and with prejudice.

Even if the Court allows any of the claims to proceed, it should strike the class allegations. Plaintiff cannot pursue a Texas Solicitation Class for which she does not even state a claim. Further, Plaintiff's atypicality as a class representative and the predominance of individualized issues ensure that Plaintiff's Do-Not-Call ("DNC") Registry class under the TCPA is not certifiable.

---

[1] The Court's Minute Order dated August 30, 2023, precludes Defendants from raising a standing argument. Dkt. 57. The Ninth Circuit only addressed whether Plaintiff suffered an injury in fact. *Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983, 986 (9th Cir. 2023). The allegations of the SAC show that Plaintiff fails to satisfy the other elements of Article III standing, traceability and redressability, and Defendants reserve their right to seek dismissal under Article III for these reasons.

## II.    PLAINTIFF'S ALLEGATIONS

Plaintiff shares a cell phone number ending in -0669 with her child. Dkt. 58 ¶¶ 37 n. 4, 44, 45. Plaintiff "would at times, allow her minor son to use that phone." *Id.* ¶ 45. Plaintiff pleads carefully, alleging that she "did not authorize ***another adult*** to consent to receiving telemarketing/solicitation messages from Defendants." *Id.* ¶ 50 (emphasis added). Plaintiff then alleges that "on or around November 3, 2019, Defendants obtained the personal data of Plaintiff's minor son." *Id.* ¶ 51.

While Plaintiff now alleges that Defendants "obtained" her son's "personal data," her prior pleading affirmatively alleged that her son ***enrolled*** in Defendants' messaging program. Dkt. 10 ¶ 41; Dkt. 11, Exs. A–C.[2] Thus, Defendants "obtained [this] personal data" when Plaintiff's son visited Smosh's website and signed up to receive text messages with news and offers related to Smosh. *See id.*; *see also* Dkt. 58 ¶¶ 6, 7, 9, 51, 52. Critically, at no point does the SAC deny that Plaintiff's son provided this prior express invitation or permission. *See* Dkt. 58. Nor could it. In fact, despite having three opportunities to plead the facts, none of the complaints contain such an allegation. Dkt. 1, 11, 58.[3]

Plaintiff alleges that the number ending in -0669 received a total of five text messages between December 25, 2019, and June 29, 2020. Dkt. 58 ¶ 54. She made no attempt to opt out of receiving these communications during this time period. *See*

---

[2] It is also unclear if these exhibits are incorporated by reference in the current SAC, given that Plaintiff provides that, "While the email exchange was attached as an exhibit to the First Amended Complaint, Plaintiff does not believe it necessary to include in the Second Amended Complaint." Dkt. 58 ¶ 68. But Plaintiff cannot omit allegations previously included simply because they undermine her claim, and these exhibits may be considered by the Court as part of the pleadings here. *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296-97 (9th Cir. 1990) ("Although leave to amend should be liberally granted, the amended complaint may only allege 'other facts ***consistent with*** the challenged pleading.'") (emphasis added)..

[3] Defendants anticipate, and the SAC has previewed, that Plaintiff will argue that this permission is invalid because Plaintiff's son was a minor at the time it was provided. *See* Dkt. 58 ¶¶ 59–66. This is a red herring and depends on an utterly contorted reading of the TCPA's statutory definitions and cherry-picked, but inapplicable, regulations. Defendants will show this contention to be meritless should Plaintiff raise it in opposition. *Supra* Section IV.F.2.

1    *id.* These messages were purportedly sent from the number (310) 299-9555. *Id.* The

2    SAC does not allege that any of the Defendants own or use this number. *See id.* And

3    while the SAC alleges a "joint enterprise" between all the Defendants, it includes no

4    facts from which the Court can infer that such a relationship exists. *See id.* ¶ 27.

5    ## III.    LEGAL STANDARD

6    ### A.    Fed. R. Civ. P. 8 and 10: Shotgun Pleading.

7    Pleadings must include "short and plain" statements of the pled claims set forth

8    in "numbered paragraphs, each limited as far as practicable to a single set of

9    circumstances" and, "[i]f doing so would promote clarity, each claim founded on a

10    separate transaction or occurrence … must be stated in a separate count." *See* Fed. R.

11    Civ. P. 8(a), 10(b). Allegations must be "simple, concise, and direct" and not mere

12    labels, legal conclusions, or formulaic recitations of elements. Fed. R. Civ. P. 8(d)(1);

13    *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007); *Ashcroft v. Iqbal*, 556 U.S.

14    662, 681 (2009). Those blurring the lines between the facts and claims to which they

15    apply or conflate parties and non-parties are often called "shotgun pleadings;" and

16    courts regularly find that such facially deficient pleadings are properly dismissed.

17    *Carrillo v. NewRez LLC*, 2023 WL 5498885, at *2 (C.D. Cal. July 20, 2023)

18    ("Plaintiff cannot simply lump defendants together; plaintiff must identify what each

19    defendant has done or the role each defendant played in causing Plaintiff's harm.").

20    ### B.    Fed. R. Civ. P. 12(b)(6): Failure to State a Claim for Relief.

21    To avoid a Rule 12(b)(6) dismissal, a plaintiff must plead "enough facts to

22    state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A

23    complaint may be dismissed as a matter of law either for lack of a cognizable legal

24    theory or for insufficient facts under a cognizable theory." *Hsieh v. FCA US LLC*,

25    440 F. Supp. 3d 1157, 1160 (S.D. Cal. 2020) (citing *Balistreri v. Pacifica Police*

26    *Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990)).

27

28

### C.    Fed. R. Civ. P. 12(f) and 23: Striking Improper Class Allegations.

A court may strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Class allegations may be properly stricken at the pleadings stage pursuant to Rules 12(f) and 23 where, as here, the requirements of Rule 23 are plainly not met. *See, e.g.*, *Dixon v. Monterey Fin. Servs., Inc.,* 2016 WL 4426908, at \*2 (N.D. Cal. Aug. 22, 2016) (striking proposed TCPA class allegations at the pleadings stage); *Stokes v. CitiMortgage, Inc.*, 2015 WL 709201, at \*4–6 (C.D. Cal. Jan. 16, 2015) (striking TCPA class allegations with prejudice that "require[d] individualized inquiries into each putative class member"); *Lith v. Iheartmedia + Ent., Inc.*, 2016 WL 4000356, at \*5 (E.D. Cal. July 25, 2016) (striking fail-safe class claims at the pleading stage). Courts strike these allegations at an early stage under the rationale that permitting a facially uncertifiable proposed class to proceed to discovery would place an undue burden and expense upon the parties and the Court alike. *See*, *e.g.*, *Yagman v. Allianz Ins.*, 2015 WL 5553460, at \*4 (C.D. Cal. May 11, 2015) (striking where allowing untenable class claims to proceed past the pleadings stage "would inject significant uncertainty as to the scope of discovery and other pre-trial proceedings") (citing *Whittlestone, Inc. v. Handi–Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010)); *Langan v. United Svcs. Auto. Assoc.*, 69 F. Supp. 3d 965, 988-89 (N.D. Cal. 2014) (striking class allegations where "discovery on the class claims would not shed any additional light" on whether plaintiff would meet Rule 23 requirements).

## IV.    ARGUMENT

### A.    The SAC Constitutes an Impermissible Shotgun Pleading that Lumps Defendants Together and is Thus Subject to Dismissal.

To satisfy the pleading requirements of Rule 8, a complaint must allege the "specific wrongdoing to provide fair notice as to what each defendant is to defend." *Flores v. EMC Mortg. Co.*, 997 F. Supp. 2d 1088, 1103 (E.D. Cal. 2014). Courts find pleadings deficient under Rule 8 where, as here, the SAC "fail[s] to allege what

role each Defendant played in [Plaintiff's] alleged harm[.]" *In re iPhone Application Litig.*, 2011 WL 4403963, at *8 (N.D. Cal. Sept. 20, 2011). Any complaint which "lumps together multiple defendants in one broad allegation fails to satisfy the notice requirement of Rule 8(a)(2)." *Sarmiento v. Marquez*, 2022 WL 2918906, at *4 (N.D. Cal. July 25, 2022); *see also Briskin v. Shopify Inc.*, 2022 WL 1427324, at *3 (N.D. Cal. May 5, 2022) (dismissing claims where complaint generally referred to three distinct defendants as "Shopify," holding "[t]he complaint does not allege plaintiff's particular claims against any specific defendant, and rather generally alleges all claims against all defendants without identifying which defendant is responsible for his alleged injuries. It thus fails to put any of the three defendants fairly on notice of the claims against them, and the SAC must be dismissed.").

Here, the SAC is a quintessential "shotgun pleading" that violates Rule 8 by lumping all of Defendants together as collective wrongdoers without differentiating how each Defendant is responsible for the harm. The SAC's opening paragraph explains that each of Defendants Smosh Productions, Mythical Entertainment, and Mythical Venture will be collectively referred to as the "Smosh Parties" or "Defendants" collectively. Dkt. 58, p. 2. The SAC further alleges that "the Smosh Parties engaged in direct telemarketing via text message" in violation of the TCPA's Do-Not-Call provisions. Dkt. 58 ¶¶ 9, 10. Additionally, the SAC alleges that all Defendants "sent at least 5 messages" to Plaintiff. *Id.* ¶¶ 54, 72–77.

This is an entirely inappropriate method of pleading under the TCPA. Indeed, courts have held that "[w]hen a plaintiff asserts a TCPA claim against multiple defendants, he must differentiate which allegations apply to which defendant—it is not enough to say that a group of defendants violated the statute." *Hamilton v. El Moussa*, 2020 WL 2614625, at *2 (C.D. Cal. Feb. 10, 2020) (dismissing TCPA claim where plaintiff alleged that he "received an unsolicited call from a number belonging to DEFENDANTS" where "DEFENDANTS" was defined as a collective of two corporate entities and two individuals); *Ewing v. GoNow Travel Club, LLC*,

2019 WL 3253058, at *3 (S.D. Cal. July 19, 2019) (dismissing TCPA claims where plaintiff alleged "defendants" collectively contacted him via autodialer, holding that, "[w]hen suing multiple defendants, a plaintiff must differentiate which allegations are against which defendant and not lump defendants together without distinguishing the alleged wrongs amongst defendants."). This standard does not ask too much of Plaintiff. Indeed, federal courts in California have held that while a plaintiff need not know for certain the roles of each defendant, they are still "expected to do *some* investigation as to who actually sent the text and whether an agency relationship existed." *Armstrong v. Investor's Bus. Daily, Inc.*, 2018 WL 6787049, at *9 (C.D. Cal. Dec. 21, 2018) (cleaned up) (emphasis in original).

By grouping the Defendants together and treating them as exchangeable throughout, Plaintiffs have not provided fair notice of the claims or theories of liability advanced against each Defendant. As such, the SAC should be dismissed.

**B.    The SAC Fails to Allege Direct Liability Against Any Defendant.**

Courts in the Ninth Circuit, and throughout the country, have held that there are "two potential theories of liability under the TCPA: (1) direct liability; and (2) vicarious liability." *Rogers v. Postmates Inc.*, 2020 WL 3869191, at *3 (N.D. Cal. July 9, 2020). The TCPA only allows for a direct liability theory to be advanced against the entity that "initiated" the call, which courts and the FCC have interpreted to be the act of physically placing the complained of calls. *Sheski v. Shopify (USA) Inc.*, 2020 WL 2474421, at *2 (N.D. Cal. May 13, 2020) (citing *In re Joint Petition filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6583 ¶ 26 (2013)). Thus, for direct liability to attach, the SAC should allege facts relating to the "identity of the caller or the nature of the phone number connected to the phone calls (such as whether it belonged to Defendant or was a fictitious phone number)[.]" *Katz v. Caliber Home Loans, Inc.*, 2023 WL 5311488, at *3 (N.D. Tex. Aug. 17, 2023).

1    **1.    The SAC Fails to Plausibly Allege that Mythical Venture Sent the At-Issue Texts.**

While not a model of clarity, the SAC presents a handful of conclusory allegations suggesting Plaintiff's contention that Mythical Venture is "responsible" for "sending" the at-issue text messages. *See* Dkt. 58 ¶¶ 24, 54 n. 5. Specifically, the SAC alleges that (1) Mythical Venture owned Smosh.com "during the relevant time period" and "was responsible for sending marketing messages during this period," (2) "Defendants sent at least 5 text messages from the apparent phone number of (310) 299-9555," and (3) "[w]hile Defendants are a joint enterprise, based on the information provided by Defendants' counsel, the party that sent the text messages was Mythical Venture." Dkt. 58 ¶¶ 24, 54 & n. 5. These allegations are entirely insufficient to satisfy pleading requirements for a direct liability TCPA claim.

Plaintiff alleges no ***facts*** showing that Mythical Venture, as opposed to a third-party, ***physically sent*** the texts. The SAC does not allege that Mythical Venture is associated with the phone number that sent the texts. *See* Dkt 58. And while certain of the texts referenced Smosh and/or Smosh-related products, that reference alone is insufficient to establish sending. *Wick v. Twilio Inc.,* 2017 WL 2964855, at *3 (W.D. Wash. July 12, 2017) ("[M]erely offering a good or service for sale does not mean that a retailer initiates the marketing calls for that product.").

In sum, Plaintiff's allegations show little more than that she received five text messages purportedly sent from a number ending in -9555, at least one of which referenced Smosh merchandise. Courts have dismissed TCPA claims under similar circumstances. *See*, *e.g.*, *Camunas v. Nat'l Republican Senatorial Comm.*, 541 F. Supp. 3d 595, 602 (E.D. Pa. 2021) (dismissing claims on direct liability grounds where plaintiff did not allege the number that sent the text messages at issue was associated with defendant); *Doyle v. GoHealth, LLC*, 2023 WL 3984951, at *4 (D.N.J. Mar. 30, 2023) (dismissing on direct liability grounds where the complaint did "not allege that the number associated with the call – 629-209-1190 – belonged

1   to Defendant."); *Aaronson v. CHW Grp., Inc.*, 2019 WL 8953349, at *2 (E.D. Va.

2   Apr. 15, 2019) (allegations that the number that contacted was "one of the

3   Defendant's many telephone numbers" deemed insufficient and conclusory when

4   presented "without any facts to explain why plaintiff believes the identified phone

5   number is owned by defendant.").

6       The SAC's allegations are insufficient to plausibly allege that Mythical

7   Venture placed the calls to Plaintiff. As such, any TCPA claim premised on direct

8   liability should be dismissed.

9           **2.    The SAC Fails to Allege Any Facts Showing that Smosh
                    Productions or Mythical Entertainment Sent the At-Issue
10                  Texts.**

11      While there may have been a smattering of conclusory allegations regarding

12  Mythical Venture's involvement in the texts, there are no similar allegations that

13  Mythical Entertainment or Smosh Productions sent the texts.

14      The SAC alleges only that Smosh Production has "upon information and

15  belief" recently taken over from Defendant Mythical Venture in operating the

16  smosh.com website and sending Smosh marketing messages." Dkt. 58 ¶ 17. There

17  are no allegations that Smosh Production sent the complained-of texts sent in 2019

18  and 2020. *See id.* So too with Mythical Entertainment. On that score, Plaintiff

19  alleges only that Mythical Entertainment is the parent company[4] of the "Smosh

20  enterprises." *Id.* ¶ 21. Thus, there are no allegations that Mythical Entertainment

21  sent the texts either. *See* Dkt. 58.

22      Case law counsels that the lack of allegations connecting Smosh Productions

23  or Mythical Entertainment is sufficient to foreclose any direct liability claims

24  against these entities here. *See*, *e.g.*, *Meeks v. Buffalo Wild Wings, Inc.*, 2018 WL

25  1524067, at *5 (N.D. Cal. Mar. 28, 2018) (dismissing direct liability claims against

26

27  _____

    [4] As explained in greater detail below, the SAC provides no basis for ignoring
    corporate formalities and imputing the actions of Mythical Entertainment's
28  subsidiary. *See infra* Section IV.D.

one of two defendants where "plaintiff's complaint contains affirmative allegations confirming that [one of the defendants] was not the maker or initiator of the text messages."); *Stark v. Stall*, 2020 WL 13158003, at *3 (S.D. Cal. Aug. 20, 2020) (dismissing direct liability theory against one of several defendants where plaintiff "simultaneously claim[ed] that it was [co-defendant] and [co-defendant's] agents who placed the calls.").

Thus, no direct liability TCPA claim lies against either Smosh Productions or Mythical Entertainment as a result.

### C.   The SAC Fails to Allege Vicarious Liability Against Any Defendant.

Plaintiff's shotgun pleading does not clearly articulate, let alone allege, a vicarious liability TCPA claim against any Defendant. Dkt. 58 ¶¶ 28, 29. Even assuming that Plaintiff's theory of liability is that Mythical Venture directly sent the texts at issue, Dkt. 58 ¶ 54 n. 5, Smosh Productions and Mythical Entertainment may only be liable under a theory of vicarious liability.

Vicarious liability cannot be casually pled; rather, courts uniformly require plaintiffs to meet a certain pleading threshold before dragging an otherwise innocent party into litigation over the alleged conduct of another. To this end, federal courts uniformly apply common law agency principles to determine vicarious TCPA liability. *See Jones v. Royal Admin. Servs., Inc*., 887 F.3d 443, 450 (9th Cir. 2018) (citing Restatement (Third) of Agency ("Restatement")). These common law "bedrock theories of agency" include "actual authority, apparent authority, and ratification." *Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.*, 2018 WL 3707283, at *3 (N.D. Cal. Aug. 3, 2018). "Although the precise details of the agency relationship need not be pleaded to survive a motion to dismiss, sufficient facts must be offered to support a reasonable inference that an agency relationship existed." *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1301 (D. Nev. 2014). None are present here.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

1

### 1. The SAC Fails to Plausibly Allege that Any Defendant Had Actual Authority over Any Other Defendant's Alleged Sending of the Texts.

To adequately allege actual authority under the TCPA, Plaintiff "must allege facts showing that [the purported principal] had the right to control [the purported agent] and the manner and means of the calls [the purported agent] made." *Naiman v. TranzVia LLC*, 2017 WL 5992123, at *6 (N.D. Cal. Dec. 4, 2017) (finding no actual authority where complaint had "not pled a single fact demonstrating that [principal] actually had control over [agent] such that it can be held vicariously liable for any of [agent]'s purported violations of the TCPA"); *Rogers*, 2020 WL 3869191, at *4 (dismissing vicarious liability claims because complaint lacked "allegations that Postmates exercised any control over the 'manner and means' in which Bird Dog executed the campaign on its behalf . . . . A plaintiff must allege facts which, if true, would show that a defendant had the right to control the caller and the manner and means of the calls made.").

Here, there are no allegations of any entity's control over the other whatsoever. *See* Dkt. 58. Given the lack of any specific factual allegations relating to control, there is no basis for finding that any co-defendant exercised actual control over any other co-defendant.

### 2. The SAC Also Fails to Plausibly Allege Apparent Authority on the Part of Any Defendant Over Any Other.

In the Ninth Circuit, "[a]pparent authority can only 'be established by proof of something said or done by the alleged principal, on which [the plaintiff] reasonably relied.'" *Canary v. Youngevity Int'l, Inc.*, 2019 WL 1275343, at *8 (N.D. Cal. Mar. 20, 2019). In *Canary*, the court dismissed vicarious liability claims on a theory of apparent authority because the pleadings did "not allege that he reasonably relied upon something said or done by [the alleged principal] to his detriment, and therefore the apparent authority theory fails." *Id.*; *see also Linlor v. Five9, Inc.*, 2017 WL 2972447, at *4 (S.D. Cal. July 12, 2017) (similarly holding "Plaintiff does not

allege that he reasonably relied, much less to his detriment, on any apparent authority with which Defendant allegedly cloaked the entity responsible for creating and sending the text messages") (cleaned up).

Here, there is no allegation that any of the co-defendants said or did anything with regard to Plaintiff that she then relied on to her detriment. *See* Dkt. 58. Without this critical element, there is no basis for finding apparent authority.

### 3. The SAC Likewise Fails to Plausibly Allege Ratification by Any Defendant For the Acts of Another.

Lastly, vicarious liability can be established under a ratification theory. *Jones*, 887 F.3d 443, 449. The SAC fails to allege ratification because "the principal-agent relationship is . . . a requisite, and ratification can have no meaning without it." *Linlor*, 2017 WL 2972447, at \*4 (S.D. Cal. July 12, 2017). Without the predicate principal-agent relationship, vicarious liability claims based on a ratification theory are subject to dismissal. *See id.*; *see also Pascal v. Agentra, LLC*, 2019 WL 5212961, at \*4 (N.D. Cal. Oct. 16, 2019) (same); *Stark*, 2020 WL 13158003, at \*4 (S.D. Cal. Aug. 20, 2020) (finding no ratification where SAC failed to establish agency relationship in the first instance and thus failed to allege facts sufficient to "support the affirmance by [the purported principal] of a prior act done by the [purported agent]").

Since Plaintiff has failed to sufficiently allege agency, *supra* Sections IV.C.1, there can be no ratification.

In the absence of any allegations supporting the existence of a common law agency relationship, Plaintiff does not allege a vicarious liability TCPA claim. Thus, Plaintiff's claims against each of the Defendants should be dismissed.

### D. Mythical Entertainment is Not Liable as a Parent Company for the Alleged Actions of Mythical Venture.

A steadfast tenet of American jurisprudence is that "[a] parent company is not liable for the actions of a subsidiary solely because of the parent-subsidiary relationship." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998). This applies with

equal force to cases brought under the TCPA. *See, e.g., Jenkins v. Nat'l Grid USA*, 2016 WL 11800166, at *5 (E.D.N.Y. Mar. 31, 2016) (holding that "'mere ownership of [an] affiliate' does not automatically confer liability" under the TCPA); *see also Shcherb v. Angi Homeservices Inc.*, 2020 WL 2571041, at *2 (S.D.N.Y. May 21, 2020) (dismissing under Rule 12(b)(6) where the plaintiff pleaded insufficient facts supporting a viable theory of TCPA liability against the corporate-parent defendants); *Zarichny v. Complete Payment Recovery Servs., Inc.*, 80 F. Supp. 3d 610, 619 (E.D. Pa. 2015) (ruling similarly); *Canary.*, 2019 WL 1275343, at *4–5 (same).

The Ninth Circuit has made clear that "[a]s a general principle, corporate separateness insulates a parent corporation from liability created by its subsidiary, notwithstanding the parent's ownership of the subsidiary." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015). Indeed, "[t]he mere fact of sole ownership and control does not eviscerate the separate corporate identity that is the foundation of corporate law." *Katzir's Floor and Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143, 1149 (9th Cir.2004).

To sufficiently allege an alter ego theory at the pleading stage, the complaint must allege "(1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice." *Ranza*, 793 F.3d at 1073 (cleaned up). "Conclusory allegations of alter ego status are insufficient, and the plaintiff 'must allege specific facts supporting both of the necessary elements.'" *Holland v. Related Companies, L.P.*, 2017 WL 11651046, at *5 (N.D. Cal. Mar. 1, 2017); *see also Qwest Commc'ns Corp. v. Herakles, LLC*, 2008 WL 783343, at *4 (E.D. Cal. Mar. 20, 2008) ("Conclusory allegations are not sufficient to support an alter ego finding.").

1

### 1.    Plaintiff Has Not Pled a Unity of Interests Between Mythical Entertainment and Mythical Venture

2

3    To establish a unity of interest between a parent and a subsidiary requires "a

4    showing that the parent controls the subsidiary 'to such a degree as to render the

5    latter the mere instrumentality of the former.'" *XR Commc'ns, LLC v. Ruckus*

6    *Wireless, Inc.*, 2018 WL 3156851, at *5 (C.D. Cal. Mar. 30, 2018). While there is

7    no precise methodology for determining the existence of a unity of interests, courts

8    commonly consider (1) whether the subsidiary is adequately capitalized; (2) the

9    observance of corporate formalities; and (3) whether the entities comingle assets.

10   *See Qwest Commc'ns Corp.*, 2008 WL 783343, at *4.

11       The only allegation remotely relating to these factors is that Mythical

12   Entertainment and Mythical Venture have the same address. Dkt. 58 ¶¶ 22, 25.

13   Beyond that, the SAC provides the conclusory allegation that "the Smosh Parties

14   acted as a joint enterprise with overlapping roles, common ownership and common

15   personnel." *Id.* ¶ 27. These allegations are insufficient for two reasons. First,

16   Plaintiff has included a factual allegation regarding only one of the factors, which is

17   not sufficient to satisfy the unity of interest test. *See, e.g., Qwest Commc'ns Corp.*,

18   2008 WL 783343, at *6 (finding alter ego inadequately pled despite factual

19   allegations relating to common ownership of various entities where the complaint

20   "pled no other facts indicating financial issues, corporate formality questions,

21   sufficient ownership issues, or commingling issues."). Second, Plaintiff's allegations

22   of common ownership and overlapping roles is entirely conclusory and need not be

23   considered. *See Holland*, 2017 WL 11651046, at *5; *Payoda, Inc. v. Photon*

24   *Infotech, Inc.*, 2015 WL 4593911, at *3 (N.D. Cal. July 30, 2015) (dismissing

25   claims based on alter ego theory, finding allegations that entities "'comingle their

26   assets' by sharing 'facilities, finances, website, email address, phone number,

27   employees, and customers' . . . is not enough to establish a unity of interest or even

28   suggest the existence of a sham corporate veil.").

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

In the absence of vicarious liability, the only basis for Mythical Entertainment to be liable for the actions of its subsidiary is if Mythical Entertainment is the alter ego of that subsidiary. There are precious few factual allegations concerning the "unity of interest" factors of the alter ego analysis, and the Court need not advance to the "injustice" assessment given Plaintiff's failure to satisfy step one.

### 2.    Plaintiff Has Not Alleged Any Fraud or Injustice that Would Flow from Failing to Respect Defendants' Corporate Forms.

Even if Plaintiff could establish a unity of interests between any of the Defendants, which Defendants deny, the SAC still must satisfy the second prong of the alter ego analysis and allege facts suggesting that "recognition of the corporate form would work an injustice to a third person." *Qwest Commc'ns Corp.* 2008 WL 783343, at *4. In analyzing this prong, "California courts generally require evidence amounting to bad faith conduct, although a showing of subjective bad faith intent is not required." *XR Commc'ns, LLC v. Ruckus Wireless, Inc.*, 2018 WL 3156851, at *5 (C.D. Cal. Mar. 30, 2018). The inequity suffered must be grave indeed, as even "[d]ifficulty in enforcing a judgment or collecting a debt does not satisfy this standard." *Id.* (citing *Virtualmagic Asia, Inc. v. Fil-Cartoons, Inc.*, 99 Cal. App. 4th 228, 245 (2002)), as modified on denial of reh'g (June 10, 2002).

Here, there are no allegations of any sort concerning any injustice that may flow from removing Mythical Entertainment and/or Smosh Productions from the case. *See* Dkt. 58. "Without an allegation addressing this question, Plaintiff has not met its prima facie burden as to Defendant[s]" on the injustice prong of the alter ego analysis. *See Apple Inc. v. Allan & Assocs. Ltd.*, 445 F. Supp. 3d 42, 55 (N.D. Cal. 2020).

Given that Plaintiff has not established that Mythical Entertainment is the alter ego of Mythical Venture, all claims dependent upon this alter ego theory must be dismissed.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### E.    Plaintiff's Claims Based on Texas State Law are Not Applicable to Text Message Communications.

Count II of the SAC, alleging violations of Section 302.101 of the Texas Business & Commercial Code, is easily dispensed with since its provisions do not apply to text messages.

The Texas Business & Commercial Code requires a "seller" to register with the State of Texas prior to sending any "telephone solicitation" to a "purchaser located in [Texas]." Tex. Bus. & Com. Code § 302.101(a). A "seller" is someone who makes a "telephone solicitation," which in turn is defined as "a ***telephone call*** a seller or salesperson initiates to induce a person to purchase, rent, claim, or receive an item." *Id.* § 302.001(1), (7) (emphasis added).

Federal courts in Texas addressing this statute have found that the unambiguous definition of "telephone call" does not encompass text messages. *Pepper v. GVG Cap. LLC*, 2023 WL 205297, at *5 (S.D. Tex. Jan. 17, 2023). In *Pepper*, the Court dismissed a claim under Section 302.101 with prejudice on ground that "[t]he plain meaning of 'telephone call' does not encompass text messages. While the word 'call,' used alone, may be ambiguous when used in common contexts ('Call me when you're ready to leave' may include a text message indicating readiness), 'telephone call,' as a phrase, is not. The placement of 'telephone' before 'call' indicates a particular kind of communication and removes whatever ambiguity might be present with the word 'call,' used alone." *See Powers v. One Techs., LLC*, 2022 WL 2992881, at *4 (N.D. Tex. July 28, 2022) (dismissing Section 302.101 claims with prejudice, holding "[t]he alleged violations are about text messages, not phone calls. Under a plain reading of the Code, Chapter 302 does not apply to text messages.).

Therefore, Plaintiff's Section 302.101 claims, which arise out of text messages, Dkt. 58 ¶¶ 54, fail as a matter of law and should be dismissed with prejudice.

### F.  Plaintiff's Class Claims Should be Stricken on the Pleadings.

The Ninth Circuit permits class allegations to be stricken at the pleading stage. *See Kamm v. California City Dev. Co.*, 509 F.2d 205, 212 (9th Cir. 1975). While striking these allegations at the pleading stage is strong medicine, the primary reason that courts typically deny these motions as premature—that "the shape and form of a class action evolves only through the process of discovery"—is not present here. *See In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 615 (N.D. Cal. 2007). Where, as here, "the defendant advances a legal argument based on the pleadings, discovery is not necessary for the court to evaluate whether a class action may be maintained. Particularly given that Rule 23(c)(1)(A) instructs courts to determine whether a class may be certified '[a]t an early practicable time,' courts may—and should—address the plaintiff's class allegations when the pleadings are facially defective and definitively establish that a class action cannot be maintained." *Wright v. Fam. Dollar, Inc.*, 2010 WL 4962838, at *1 (N.D. Ill. Nov. 30, 2010) (striking class claims at the pleading stage).

Both of Plaintiff's putative class definitions should be stricken because the face of the SAC makes readily apparent that neither class is capable of being certified.

### 1.  Plaintiff's Texas Business & Commercial Code Class Should be Stricken.

Plaintiff seeks to represent a class of persons who received a "marketing call" or "text message" while Defendant was not a registered telemarketer in Texas. *See* Dkt. 58 ¶ 78; *supra* Section IV.E.1. However, the SAC alleges that she only ever received ***text*** messages from Defendants. *Id.* ¶ 54. As set forth above, text messages do not qualify as "telephone calls" under the Texas Business & Commercial Code. *See Pepper*, 2023 WL 205297, at *5; *Powers*, 2022 WL 2992881, at *4. Thus, Plaintiff cannot pursue class claims—or any claims—on this basis.

1      Further, Plaintiff has no standing to bring a claim for those putative class

2 members who received a "telephone call" when she never received one. It is well

3 settled in the Ninth Circuit that a "district court has an obligation to ensure that the

4 named plaintiff is a member of the class he seeks to represent[.]" *Reyes v. Educ.*

5 *Credit Mgmt. Corp.*, 773 F. App'x 989, 990 (9th Cir. 2019). To that end, "[b]ecause

6 a class action cannot go forward without a named plaintiff, a putative class action

7 lacking an appropriate named plaintiff should be dismissed." *Id.* Here, Plaintiff

8 cannot maintain the Texas subclass because she received a text message: a

9 communication not covered by the underlying statute. Dkt. 58 ¶ 54. No amount of

10 repleading or discovery will change this undisputed fact.

11      For these reasons, the Texas Solicitation Class allegations should be stricken.

12           **2.**     **Plaintiff's TCPA DNC Subclass Should be Stricken.**

13      Plaintiff also seeks to represent all persons who received *any* more than one

14 communication from Defendants in a 12-month period while their number was on

15 the DNC list. *See* Dkt. 58 ¶ 78. But the TCPA only prohibits *unsolicited*

16 communications to numbers placed on the federal DNC list. As structured, the class

17 would require thousands of mini trials to determine whether any putative class

18 member provided their prior express invitation or permission to be called. *See* Dkt.

19 58 ¶ 80 (alleging that "Plaintiff reasonably believes that hundreds or thousands of

20 people have been harmed by Defendants' actions.").

21      Individualized issues predominate and Plaintiff cannot establish commonality

22 for this class. Fed. R. Civ. P. 23(a)(2). Plaintiff's own atypicality (discussed below)

23 is evidence that this assessment would require individualized inquiries *even for*

24 *those numbers that provided prior express invitation or permission*. Plaintiff does

25 not dispute that her child, a user of the phone, provided Defendants with Plaintiff's

26 number and provided permission to be contacted at that number. Dkt. 58 ¶¶ 12, 14,

27 37 n. 4, 44, 45, 50, 51–53, 68 n. 6; Dkt. 10 ¶ 41, Dkt. 11 Exs. A–C. As such, even

28 for individuals who provided prior express invitation or permission to receive such

1  text messages and would otherwise not be a member of the class are subject to

2  further inquiry into at least the following issues: (1) whether the number was

3  provided by a child, (2) whether the child had their parent's authorization to use the

4  number, (3) whether the agreement to be contacted was voided[5] by the parents, (4)

5  whether the minor voided the agreement to be contacted, (5) whether the parent or

6  child was the primary user of the telephone. This is untenable, unmanageable, and

7  patently unreasonable. *See Tomaszewski v. Circle K Stores Inc.*, 2021 WL 2661190,

8  at *3 (D. Ariz. Jan. 12, 2021) (striking TCPA class claims at the pleading stage,

9  holding "[a]llowing the class allegations as currently proposed, would be 'palpably

10  unfair to the Defendant' because the Defendant would be required to perform an

11  inquiry in order to ascertain why each individual was messaged and whether

12  Defendant would claim that consent was obtained for each recipient in the same

13  manner as the named Plaintiffs.").

14      In addition, the class claims should be stricken because the face of the

15  pleadings shows that Plaintiff's claims are atypical for the class she defines, thus

16  Plaintiff's class definition likewise fails for lack of typicality. Fed. R. Civ. P.

17  23(a)(3). Plaintiff's son was an authorized user of Plaintiff's phone at the time he

18  provided permission to be contacted. Dkt. 58 ¶¶ 12, 14, 37 n. 4, 44, 45, 50, 51–53,

19  68 n. 6; Dkt. 11 Exs. B, C.

20      As demonstrated, both of Plaintiff's putative class definitions fail on the face

21  of the pleadings. Allowing this case to proceed as a putative class action would be a

---

22  [5] "[A] minor may enter contracts for personal property if it is within their immediate possession or control. [. . .] The contract between [minor] and [plaintiff] is voidable,

23  not void, subject to disaffirmance." *Jain v. Tesla Inc.*, 2022 WL 20611265, at *4 (N.D. Cal. Oct. 12, 2022); *I.B. ex rel. Fife v. Facebook, Inc.*, 905 F. Supp. 2d 989,

24  1004 (N.D. Cal. 2012) ("Plaintiffs cite no authority that a parent has an independent right to disaffirm contracts entered into by their children, when not acting in a

25  representative capacity on behalf of the minor. Section 6710 clearly provides that 'a contract of a minor may be disaffirmed by the minor before majority or within a

26  reasonable time afterwards,' reflecting the principle that the power of avoidance is personal to the minor."); *Imber-Gluck v. Google, Inc.*, 2014 WL 3600506, at *3

27  (N.D. Cal. July 21, 2014) ("The power to disaffirm a minor's contract does not extend to the minor's parents.").

28

manifest waste of the Court's and the parties' resources. As such, Plaintiff's class claims should be stricken.

## V.    THE SAC SHOULD BE DISMISSED WITH PREJUDICE

Plaintiff has already had three opportunities to plead viable claims against Defendants. *See* Dkts. 1, 11, 58. Where Plaintiff fails to rectify the deficiencies in pleadings identified in prior motions to dismiss, as is the case here, dismissal without leave to amend is appropriate. *See*, *e.g.*, *Frame v. Cal-W. Reconveyance Corp.*, 2011 WL 3876012, at *3 (D. Ariz. Sept. 2, 2011) (dismissing with prejudice where "despite the benefit and existence of fully-briefed motions to dismiss, [p]laintiff's First Amended Complaint fail[ed] to cure the deficiencies noticed in [d]efendants' prior motions"). The Court should rule similarly here.

## VI.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the SAC in its entirety under Rules 8, 10 and 12(b)(6), or, in the alternative, strike Plaintiff's class claims from the SAC under Rule 12(f).

Dated:  October 23, 2023           MANATT, PHELPS & PHILLIPS, LLP


                                   By:  /s/Alexandra N. Krasovec
                                        Alexandra N. Krasovec
                                        Cody A. DeCamp
                                        Marah A. Bragdon
                                        Attorneys for Defendants
                                        Smosh Productions, Inc., Mythical
                                        Entertainment, LLC and Mythical Venture,
                                        Inc. d/b/a "Smosh"