1  MANATT, PHELPS & PHILLIPS, LLP
   ALEXANDRA N. KRASOVEC (SBN 279578)
2  Email: AKrasovec@manatt.com
   CODY A. DeCAMP (SBN 311327)
3  Email: CDeCamp@manatt.com
   MARAH A. BRAGDON (SBN 342646)
4  Email: MBragdon@manatt.com
   2049 Century Park East, Suite 1700
5  Los Angeles, California 90067
   Telephone: (310) 312-4000
6  Facsimile: (310) 312-4224

7  Attorneys for Defendant
   MYTHICAL VENTURE, INC. d/b/a "Smosh"
8

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11

12

13  KRISTEN HALL,                      Case No. 2:23-cv-10324-JFW-KES

              Plaintiff,               Hon. John F. Walter
14
        v.                             **DEFENDANT MYTHICAL VENTURE,**
15                                      **INC.'S NOTICE OF MOTION AND**
    MYTHICAL VENTURE, INC.              **MOTION TO DISMISS PLAINTIFF'S**
16  d/b/a "Smosh",                      **THIRD AMENDED COMPLAINT**
                                        **UNDER FED. R. CIV. P. 12(b)(6)**
17            Defendant.                **AND/OR STRIKE CLASS**
                                        **ALLEGATIONS UNDER FED. R. CIV.**
18                                      **P. 12(f) AND 23; MEMORANDUM OF**
                                        **POINTS AND AUTHORITIES;**
19                                      **[PROPOSED] ORDER**

20                                      Date:        January 29, 2024
                                        Time:        1:30 p.m.
21                                      Courtroom:   7A

22                                      Date Filed: October 28, 2021

23

24

25

26

27

28

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF
RECORD**:

PLEASE TAKE NOTICE that on January 29, 2023, at 1:30 p.m. in
Courtroom 7A of this Court, or as soon thereafter as counsel may be heard,
Defendant Mythical Venture, Inc. d/b/a "Smosh" ("Mythical Venture" or
"Defendant") will and hereby does move under Rule 12(b)(6) to dismiss Plaintiff
Kristen Hall's ("Plaintiff") Third Amended Complaint ("TAC"), or, in the
alternative, to strike Plaintiff's class allegations under Rules 12(f) and 23.

Plaintiff's claims are subject to dismissal under Rule 12(b)(6) as a matter of
law based upon the pleadings. Plaintiff's allegations, taken together with documents
referenced by and incorporated into the pleadings, affirm that her child provided
prior express invitation or permission to be contacted at Plaintiff's phone number,
thus the text messages here were not "telephone solicitations" as defined by the
TCPA's implementing regulations. While prior express invitation or permission can
be an affirmative defense to TCPA claims, it can also properly serve as a basis to
dismiss where apparent from the face of the pleadings. It plainly is here. The TAC is
Plaintiff's fourth attempt to plead a tenable claim; thus, dismissal should be with
prejudice.

Alternatively, should the Court decide not to dismiss the TAC in its entirety for
any reason, Defendant respectfully moves to strike Plaintiff's class allegations under
Fed. R. Civ. P. 12(f) and/or 23. This remedy is appropriate as Plaintiff's lack of
typicality is readily apparent from the face of the pleadings. As evidenced by the
allegations in the TAC, Plaintiff's circumstances are so unique and atypical that she
cannot serve as a class representative in this action; individualized issues also abound.

This Motion is based on this Notice of Motion and Motion, the incorporated
Memorandum of Points and Authorities below, all papers on file herein, all matters
subject to judicial notice, and any argument or evidence that may be presented to or
considered by the Court prior to ruling.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

This motion is made following the conference of counsel pursuant to L.R. 7-3 and Section 5(b) of the Court's standing order, which took place via telephone call on December 7, 2023, and by video conference on December 22, 2023. The parties were unable to reach an agreement thereon and, as such, this Motion is opposed.

Dated: December 29, 2023          MANATT, PHELPS & PHILLIPS, LLP

By: /s/Alexandra N. Krasovec
    Alexandra N. Krasovec
    Cody A. DeCamp
    Marah A. Bragdon
    Attorneys for Defendant
    Mythical Venture, Inc. d/b/a "Smosh"

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ..................................................................................... 1

II.    THE HISTORY OF PLAINTIFF'S PLEADINGS AND
       ALLEGATIONS ...................................................................................... 2

       A.    The Initial Complaint ................................................................... 2

       B.    The Amended Complaint .............................................................. 2

       C.    The Second Amended Complaint ................................................. 3

III.   PLAINTIFF'S ALLEGATIONS IN THE TAC .................................... 4

IV.    ADDITIONAL PROCEDURAL HISTORY ........................................ 5

V.     LEGAL STANDARD ............................................................................. 5

       A.    Fed. R. Civ. P. 12(b)(6): Failure to State a Claim for Relief ............... 5

       B.    Fed. R. Civ. P. 12(f) and 23: Striking Improper Class Allegations ....... 5

VI.    ARGUMENT ........................................................................................... 6

       A.    Plaintiff Cannot Establish a DNC Registry Violation, Thus Her
             Claim Should be Dismissed Under FRCP 12(b)(6) .............................. 6

             1.    The Texts Are Not "Telephone Solicitations" Because the
                   Prior Express Invitation or Permission Exemption Applies ........ 6

             2.    Plaintiff Cannot Recover on Her Individual Claim Due to
                   Her Son's Prior Express Invitation or Permission .................... 10

       B.    Alternatively, or In Addition, Plaintiff's Class Allegations
             Should be Stricken on the Pleadings for their Numerous Failures ........ 15

             1.    Plaintiff's Claim is Subject to Unique Defenses,
                   Rendering Her Claims Atypical and Making Her an
                   Inadequate Class Representative ................................................. 16

             2.    Individualized Inquiries Will Predominate ............................... 19

VII.   ANY DISMISSAL SHOULD BE WITH PREJUDICE ............................. 21

VIII.  CONCLUSION ...................................................................................... 21

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

## CASES

*A.D. v. Credit One Bank, N.A.*,
   885 F.3d 1054 (7th Cir. 2018) .................................................................. 12

*Aderhold v. Car2go N.A., LLC*,
   2014 WL 794802 (W.D. Wash. Feb. 27, 2014) ......................................... 8

*AG v. S. Bay Dreams Coop., Inc.*,
   2018 WL 2002370 (S.D. Cal. Apr. 30, 2018) .......................................... 12

*AT&T Corp. v. F.C.C.*,
   323 F.3d 1081 (D.C. Cir. 2003) ............................................................... 11

*Balistreri v. Pacifica Police Dep't.*,
   901 F.2d 696 (9th Cir. 1990) ..................................................................... 5

*Banarji v. Wilshire Consumer Cap., LLC*,
   2016 WL 595323 (S.D. Cal. Feb. 12, 2016) ............................................ 18

*Barton v. Delfgauw*,
   2022 WL 18108396 (W.D. Wash. Sept. 23, 2022) .................................... 7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................... 5

*Breslow v. Wells Fargo Bank, N.A.*,
   755 F.3d 1265 (11th Cir. 2014) ............................................................... 12

*Bridge v. Credit One Fin.*,
   294 F. Supp. 3d 1019 (D. Nev. 2018) ...................................................... 18

*Buchannan for T.B. v. Diversified Consultants, Inc.*,
   2014 WL 3907834 (D. Colo. May 8, 2014) ............................................. 12

*C.M.D. v. Facebook, Inc.*,
   2014 WL 1266291 (N.D. Cal. Mar. 26, 2014) ......................................... 13

*Clark v. Time Warner Cable*,
   523 F.3d 1110 (9th Cir. 2008) ............................................................ 10, 11

*Connelly v. Hilton Grand Vacations Co., LLC*,
   294 F.R.D. 574 (S.D. Cal. 2013) ............................................................. 20

*D.G. v. Diversified Adjustment Serv., Inc.*,
   2011 WL 5506078 (N.D. Ill. Oct. 18, 2011) ........................................... 12

# TABLE OF AUTHORITIES
(continued)

**Page**

*Dairyland Cty. Mut. Ins. Co. of Texas v. Roman*,
   498 S.W.2d 154 (Tex. 1973) ................................................................. 13

*Dixon v. Monterey Fin. Servs., Inc.*,
   2016 WL 4426908 (N.D. Cal. Aug. 22, 2016) ....................................... 5

*Dolemba v. Kelly Servs., Inc.*,
   2017 WL 429572 (N.D. Ill. Jan. 31, 2017) ............................................ 8

*Gen. Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147 (1982) ............................................................................. 17

*Gillam v. Reliance First Cap., LLC*,
   2023 WL 2163775 (E.D.N.Y. Feb. 22, 2023) ........................................ 6

*Hall v. Smosh Dot Com, Inc.*,
   72 F.4th 983 (9th Cir. 2023) ........................................................... passim

*Hanon v. Dataproducts Crop.*,
   976 F.2d 497 (9th Cir. 1992) ............................................................... 16

*Hsieh v. FCA US LLC*,
   440 F. Supp. 3d 1157 (S.D. Cal. 2020) ................................................. 5

*Huyge v. Gold's Gym Franchising, LLC*,
   2014 WL 11515701 (D. Ariz. July 3, 2014) .......................................... 8

*I.B. ex rel. Fife v. Facebook, Inc.*,
   905 F. Supp. 2d 989 (N.D. Cal. 2012) ................................................. 20

*Imber-Gluck v. Google, Inc.*,
   2014 WL 3600506 (N.D. Cal. July 21, 2014) ...................................... 20

*In re Wal-Mart Stores, Inc. Wage & Hour Litig.*,
   505 F. Supp. 2d 609 (N.D. Cal. 2007) ................................................. 15

*Jain v. Tesla Inc.*,
   2022 WL 20611265 (N.D. Cal. Oct. 12, 2022) .................................... 20

*Kamm v. California City Dev. Co.*,
   509 F.2d 205 (9th Cir. 1975) ............................................................... 15

*Koos v. First Nat. Bank of Peoria*,
   496 F.2d 1162 (7th Cir. 1974) ............................................................. 16

*Krakauer v. Dish Network, L.L.C.*,
   925 F.3d 643 (4th Cir. 2019) .......................................................... 11, 12

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

iii
TABLE OF AUTHORITIES

**TABLE OF AUTHORITIES**
(continued)

Page

*Langan v. United Svcs. Auto. Assoc.*,
  69 F. Supp. 3d 965 (N.D. Cal. 2014).................................................. 6

*Leadsinger, Inc. v. BMG Music Pub.*,
  512 F.3d 522 (9th Cir. 2008) ........................................................... 21

*Lesnik v. Eisenmann SE*,
  374 F. Supp. 3d 923 (N.D. Cal. 2019)............................................. 21

*Leyse v. Bank of Am. Nat. Ass'n*,
  804 F.3d 316 (3d Cir. 2015) ............................................................ 14

*Lightbourne v. Printroom Inc.*,
  307 F.R.D. 593 (C.D. Cal. 2015)..................................................... 17

*Lopez v. Kmart Corp.*,
  2015 WL 2062606 (N.D. Cal. May 4, 2015) ................................... 13

*Murphy v. DCI Biologicals Orlando, LLC*,
  2013 WL 6865772 (M.D. Fla. Dec. 31, 2013) .................................. 9

*Reardon v. Uber Techs., Inc.*,
  115 F. Supp. 3d 1090 (N.D. Cal. 2015)............................................. 8

*Reddy v. Litton Indus., Inc.*,
  912 F.2d 291 (9th Cir. 1990) ............................................................. 4

*Rivera v. Peri & Sons Farms, Inc.*,
  735 F.3d 892 (9th Cir. 2013) ............................................................. 7

*Sams v. Yahoo! Inc.*,
  713 F.3d 1175 (9th Cir. 2013) ........................................................... 7

*Sanders v. Apple Inc.*,
  672 F.Supp.2d 978 (N.D. Cal. 2009)............................................... 15

*Sapan v. Veritas Funding, LLC*,
  2023 WL 6370223 (C.D. Cal. July 28, 2023) ................................. 19

*Satterfield v. Simon & Schuster, Inc.*,
  569 F.3d 946 (9th Cir. 2009) ............................................................. 6

*Schwartz v. Harp*,
  108 F.R.D. 279 (C.D. Cal. 1985)..................................................... 16

*Stokes v. CitiMortgage, Inc.*,
  2015 WL 709201 (C.D. Cal. Jan. 16, 2015)...................................... 5

# TABLE OF AUTHORITIES
(continued)

Page

*Tomaszewski v. Circle K Stores Inc.*,
   2021 WL 2661190 (D. Ariz. Jan. 12, 2021)......................................................20

*Trans Nat. Commc'ns, Inc. v. Overlooked Opinions, Inc.*,
   877 F. Supp. 35 (D. Mass. 1994)......................................................................11

*Trim v. Reward Zone USA LLC*,
   76 F.4th 1157 (9th Cir. 2023)..............................................................................9

*Whittlestone, Inc. v. Handi–Craft Co.*,
   618 F.3d 970 (9th Cir. 2010)................................................................................6

*Wiley v. Am. Fin. Network, Inc.*,
   2023 WL 4681538 (C.D. Cal. July 3, 2023) .....................................................19

*Wright v. Fam. Dollar, Inc.*,
   2010 WL 4962838 (N.D. Ill. Nov. 30, 2010)...................................................16

*Yagman v. Allianz Ins.*,
   2015 WL 5553460 (C.D. Cal. May 11, 2015)....................................................6

*Zean v. Fairview Health Servs.*,
   858 F.3d 520 (8th Cir. 2017)...............................................................................4

## STATUTES

47 U.S.C. § 227(b) ................................................................................................14

47 U.S.C. § 227(c)(5) .................................................................................6, 8, 12

47 U.S.C. § 227(f)(2) ...........................................................................................12

47 U.S.C. § 258(a) ...............................................................................................10

Cal. Civ. Code § 1557...........................................................................................13

Cal. Family Code § 6700 ......................................................................................13

## OTHER AUTHORITIES

47 C.F.R. § 64.1200(f)(15) .....................................................................................6

47 C.F.R. § 64.1100.........................................................................................10, 11

47 C.F.R. § 64.1100(h).....................................................................................10, 11

47 C.F.R. § 64.1200(c)(2) .......................................................................................6

47 C.F.R. § 64.1200(c)(2)(ii)............................................................................7, 10

47 C.F.R. § 64.1200(f)(9) .......................................................................................9

TABLE OF AUTHORITIES

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3

47 C.F.R. § 64.1200(f)(15)(i) ................................................................. 8

4

*In the Matter of Policies and Rules Concerning Changing Long Distance
    Carriers*,

5

    7 F.C.C. Reg. 1038 (1992) ..........................................................11

6

*In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of
    1991*,

7

    27 F.C.C. Rcd. 1830 (2012) ...........................................................9

8

*In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of
    1991*,

9

    30 F.C.C. Rcd. 7961 (2015) ...............................................13, 14

10

**RULES**

11

Fed. R. Civ. P. 12(b)(6) ..............................................................passim

12

Fed. R. Civ. P. 12(f)....................................................... 1, 5, 21

13

Fed. R. Civ. P. 23................................................................. 5, 6

14

Fed. R. Civ. P. 23(a)(2)................................................... 16, 20

15

Fed. R. Civ. P. 23(a)(3)................................................... 16, 18

16

Fed. R. Civ. P. 23(c)(1)(A)................................................... 15

17

18

19

20

21

22

23

24

25

26

27

28

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.    INTRODUCTION**

3      When the Ninth Circuit reversed the Honorable John A. Mendez's order

4    granting Defendant Mythical Venture's Motion to Dismiss the Amended Complaint

5    (Dkt. 34), it addressed a narrow point of law: "The **sole issue** before us is whether

6    Hall has Article III standing to bring claims under the TCPA." *Hall v. Smosh Dot*

7    *Com, Inc.*, 72 F.4th 983, 987 (9th Cir. 2023) (emphasis added). While Plaintiff may

8    have Article III standing to pursue this claim, the Ninth Circuit clearly articulated

9    that merits challenges to "[t]he issues of whether Hall's son consented to receive

10    messages, and whether such consent would be sufficient to satisfy the TCPA" were

11    to be "reserved for the district court on remand." *Id.* at 991.

12      The Third Amended Complaint (Dkt. 73, "TAC"), like its predecessors,

13    confirms that Plaintiff's child provided the phone number at issue to Defendant

14    Mythical Venture, Inc. d/b/a Smosh ("Defendant"). The allegations in the TAC, as

15    well as the exhibits appended to the Amended Complaint, conclusively show that

16    Plaintiff's child—a regular and authorized user of Plaintiff's telephone, and a

17    consumer—provided Defendant with his permission to be contacted at that number.

18    This permission represents a complete defense to Plaintiff's Do-Not-Call ("DNC")

19    claim, and the Court could, and should, dismiss Plaintiff's claim in its entirety under

20    Rule 12(b)(6) on this basis.

21      But even if the Court does not do so, the issues raised by Defendant clearly

22    demonstrate that the overwhelming majority of this case will be spent litigating

23    defenses that are entirely unique to Plaintiff and present issues that are not capable

24    of being adjudicated on a class basis. As such, the Court should, at minimum, strike

25    Plaintiff's class allegations under Rule 12(f) and/or 23.

26

27

28

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

## II.  THE HISTORY OF PLAINTIFF'S PLEADINGS AND ALLEGATIONS

### A.  The Initial Complaint.

Plaintiff Kristen Hall ("Plaintiff") filed her initial Complaint (Dkt. 1) on October 28, 2021. It alleged that previously named defendant Smosh.com, Inc. ("Smosh") "engages in 'direct' telemarketing via text message and calls to phone numbers entered in the website smosh.com." Dkt. 1, ¶ 8. It further alleged that:

> Smosh has routinely sent out solicitous text message to phone numbers provided by minors on the basis that said minor 'consented' or 'opted in' to receive those communications.

*Id.*, ¶ 9. Plaintiff is the owner of the phone number 575-XXX-0669. *Id.*, ¶ 22. She is not the exclusive user of the phone, as she "would at times, allow her minor son to use that phone." *Id.*, ¶ 23. Plaintiff alleges that, on or around November 3, 2019—five days *before* Plaintiff placed the phone number on the FCC's DNC List—Smosh "obtained the personal data of Plaintiff's minor son, who was 13 years old at the time." *Id.*, ¶¶ 25, 28. This information "identified that Plaintiff's son was 13 years old at the time, and listed his telephone number as 575-XXX-0669." *Id.*, ¶ 29. Plaintiff alleges that she subsequently received five text messages at the phone number 575-XXX-0669 from Defendant between December 25, 2019, and June 29, 2020. *Id.*, ¶ 31. Plaintiff also alleges that, on September 9, 2021, Defendant's in-house counsel responded to an e-mail from Plaintiff's counsel informing him how Smosh.com came to send messages to the number at issue, including accompanying evidence. *Id.*, ¶ 36; Dkt. 1-2. This correspondence confirmed that the number was entered into Smosh's website on November 3, 2019, along with (1) the name of Plaintiff's child, (2) his city and state, (3) date of birth, and (4) email address. Dkt. 1-3.

### B.  The Amended Complaint.

Plaintiff filed an Amended Complaint on December 29, 2021, adding Mythical Venture, Inc. as a defendant given its role as Smosh's parent company.

Dkt. 10, ¶ 15. Like its predecessor, the Amended Complaint alleged that Plaintiff allowed her child to use the phone, and re-attached the exhibits from the Complaint showing that Plaintiff's child provided Defendant with the phone number on November 3, 2019. *Id.*, ¶¶ 25, 26, 39–41; Dkt. 11-2, 11-3.

Defendant moved to dismiss the Amended Complaint on the grounds that Plaintiff did not have standing to pursue a claim for text messages received by her son, and because Plaintiff's son provided his consent to be contacted at the number he shared with Plaintiff. Dkt. 34. Chief Judge John A. Mendez granted the motion on the issue of standing and did not reach Defendant's argument that Plaintiff's son provided Defendant with his consent to be contacted. *See* Dkt. 44. Plaintiff appealed this decision, and the Ninth Circuit reversed. *See Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983 (9th Cir. 2023). The Ninth Circuit limited its review to whether Plaintiff had standing to bring a claim as the subscriber of the phone and left the issue of whether Plaintiff consented to receive the calls for the District Court to determine on remand. *See id.*

## C.    The Second Amended Complaint.

Plaintiff filed a Second Amended Complaint on September 20, 2023. Dkt. 58. It alleged that Defendant sent its text messages "to phone numbers provided by minors on the basis that said minor 'consented' or 'opted in' to receive those communications." Dkt. 58, ¶ 12. It further confirmed that Plaintiff and her child shared a phone. *Id.*, ¶¶ 44, 45. It again confirmed that Plaintiff's son provided the phone number to Defendant on November 3, 2019. *Id.*, ¶¶ 51–53. It also referenced the email exchange with Defendant's in-house counsel on September 9, 2021, where counsel provided proof of Plaintiff's son's consent to receive messages from Defendant. *Id.*, ¶ 39. However, Plaintiff elected to omit the exhibits attached to the prior iterations of the pleadings since "Plaintiff does not believe it necessary to include in the Second Amended Complaint." *Id.*, ¶ 68 n. 6. Defendant moved to dismiss the Second Amended Complaint on October 23, 2023. Dkt. 69.

### III.    PLAINTIFF'S ALLEGATIONS IN THE TAC

Plaintiff filed the TAC with the consent of Defendant after the Parties met and conferred over the identity of the entity that sent the text messages, leading to the dismissal of all defendants other than Mythical Venture. Dkt. 72. The TAC alleges that Plaintiff shares a cell phone number ending in -0669 with her child. Dkt. 73 ¶¶ 26 n. 1, 38, 46, 48. Plaintiff alleges that she "would at times, allow her minor son to use that phone." *Id.* ¶ 45. In the TAC, Plaintiff pleads carefully, alleging that she "did not authorize **another adult** to consent to receiving telemarketing/solicitation messages from Defendants." *Id.* ¶ 44 (emphasis added). Plaintiff then alleges that "on or around November 3, 2019, Defendants obtained the personal data of Plaintiff's minor son." *Id.* ¶ 45. However, she removes the allegations from her prior pleadings that her son **enrolled** in Defendant's messaging program. Dkt. 1 ¶ 38; Dkt. 10 ¶ 41; Dkt. 11.[1]

Thus, the only reasonable inference to be drawn is that Defendant "obtained [this] personal data" when Plaintiff's son visited smosh.com and signed up to receive text messages with news and offers related to Smosh at the phone number. *See id.*; *see also* Dkt. 73 ¶¶ 6, 7, 9, 45, 46. Critically, at no point does the TAC deny that Plaintiff's son provided this prior express invitation or permission. *See* Dkt. 73. In fact, despite **four** opportunities to plead the facts, none of the complaints contain such an allegation. Dkts. 1, 11, 58.

---

[1] It is unclear if these exhibits are incorporated by reference in the current TAC. But Plaintiff cannot opportunistically omit allegations previously included simply because they undermine her claim, and the Court may consider these exhibits as part of the pleadings here. *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296-97 (9th Cir. 1990) ("Although leave to amend should be liberally granted, the amended complaint may only allege 'other facts consistent with the challenged pleading.'"). Plaintiff does not appear to dispute that these prior iterations of the pleading may be considered for the purposes of this Motion. *See* Dkt. 101, pp. 4, 5. In any event, these exhibits are necessarily "embraced by the pleadings" and properly before the Court on this Motion. *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) ("In general, materials embraced by the complaint include 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleadings.'").

## IV.    ADDITIONAL PROCEDURAL HISTORY

Defendant filed an unopposed Motion to Transfer Venue to the Central District of California on September 22, 2023. Dkts. 61, 64. Plaintiff subsequently filed the TAC, and Judge Drozd entered a briefing schedule whereby Defendant's Motion to Dismiss would be due on December 8, 2023. Dkt. 73, 74. Judge Drozd granted the Motion to Transfer on December 8, 2023. Dkt. 75. Defendant filed its Motion to Dismiss that same day out of an abundance of caution so as to abide by the briefing schedule. Dkt. 76. The Motion is now being refiled after being modified to conform to the Central District's Local Rules and the Court's Standing Order.

## V.    LEGAL STANDARD

### A.    Fed. R. Civ. P. 12(b)(6): Failure to State a Claim for Relief.

To avoid a Rule 12(b)(6) dismissal, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory." *Hsieh v. FCA US LLC*, 440 F. Supp. 3d 1157, 1160 (S.D. Cal. 2020) (citing *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990)).

### B.    Fed. R. Civ. P. 12(f) and 23: Striking Improper Class Allegations.

A court may strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Class allegations may be properly stricken at the pleadings stage pursuant to Rules 12(f) and 23 where, as here, the requirements of Rule 23 are plainly not met. *See*, *e.g.*, *Dixon v. Monterey Fin. Servs., Inc.*, 2016 WL 4426908, at *2 (N.D. Cal. Aug. 22, 2016) (striking proposed TCPA class allegations at the pleadings stage); *Stokes v. CitiMortgage, Inc.*, 2015 WL 709201, at *4–6 (C.D. Cal. Jan. 16, 2015) (striking TCPA class allegations with prejudice that "require[d] individualized inquiries into each putative class member"); *Lith v. Iheartmedia + Ent., Inc.*, 2016 WL 4000356, at *5 (E.D. Cal. July 25, 2016) (striking fail-safe class claims at the pleading stage). Courts strike these

allegations at an early stage under the rationale that permitting a facially uncertifiable proposed class to proceed to discovery would place an undue burden and expense upon the parties and the Court alike. *See*, *e.g.*, *Yagman v. Allianz Ins.*, 2015 WL 5553460, at *4 (C.D. Cal. May 11, 2015) (striking where allowing untenable class claims to proceed past the pleadings stage "would inject significant uncertainty as to the scope of discovery and other pre-trial proceedings") (citing *Whittlestone, Inc. v. Handi–Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010)); *Langan v. United Svcs. Auto. Assoc.*, 69 F. Supp. 3d 965, 988-89 (N.D. Cal. 2014) (striking class allegations where "discovery on the class claims would not shed any additional light" on whether plaintiff would meet Rule 23 requirements).

## VI.    ARGUMENT

### A.    Plaintiff Cannot Establish a DNC Registry Violation, Thus Her Claim Should be Dismissed Under FRCP 12(b)(6).

To state a claim for a violation of the TCPA's DNC provisions, a plaintiff must allege that the defendant: (1) initiated more than one 'telephone solicitation call' within a 12-month period; (2) to a 'residential telephone subscriber who has registered his or her telephone number' on the National DNC registry; (3) without the prior consent of the recipient." *Gillam v. Reliance First Cap., LLC*, 2023 WL 2163775, at *2 (E.D.N.Y. Feb. 22, 2023). *See* 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2). Plaintiff cannot satisfy the elements of her claim.

### 1.    The Texts Are Not "Telephone Solicitations" Because the Prior Express Invitation or Permission Exemption Applies.

"The term telephone solicitation means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person, ***but such term does not include a call or message***: (i) ***To any person with that person's prior express invitation or permission*** . . . ." 47 C.F.R. § 64.1200(f)(15) (emphasis added). Text messages are considered "calls" under the TCPA. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009). Here, the texts are exempt from the

definition of "telephone solicitation" because Plaintiff's son provided prior express invitation or permission.[2]

Prior Express Invitation or Permission ("PEIP") is "evidenced by a signed, written agreement between the consumer and seller which states that the consumer agrees to be contacted by this seller and includes the telephone number to which the calls may be placed." *Hall,* 72 F.4th at 990 (quoting 47 C.F.R. § 64.1200(c)(2)(ii)). "Courts have found that a person can provide [PEIP] by submitting a web form with personal information when the web form includes a notice that the person agrees to be contacted." *Barton v. Delfgauw*, 2022 WL 18108396, at *1 (W.D. Wash. Sept. 23, 2022). The pleadings evidence Plaintiff's son provided PEIP; thus, the texts are exempt from the definition of "telephone solicitation" and not subject to the DNC Registry requirements.[3]

The TAC alleges that consumers generally, and Plaintiff's son specifically, provided PEIP to receive the texts in question via the smosh.com website. To begin, the TAC alleges that "Smosh engaged in 'direct' telemarketing via text message and calls to phone numbers purportedly ***entered onto the website smosh.com***." Dkt. 73, ¶ 9 (emphasis added). The TAC further alleges that Defendant "routinely sent out marketing message [sic] to phone numbers provided by minors on the basis that said minor ***'consented' or 'opted in' to receive those communications***." *Id.*, ¶ 12

---

[3] The Court may consider the applicability of this exemption on the pleadings, even if it could be classified as an affirmative defense. *See Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013) (internal quotation omitted) ("[T]he assertion of an affirmative defense may be considered properly on a motion to dismiss where the allegations in the complaint suffice to establish the defense."); *see also Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013) ("When an affirmative defense is obvious on the face of a complaint, . . . a defendant can raise that defense in a motion to dismiss.")

[3] The Court may consider the applicability of this exemption on the pleadings, even if it could be classified as an affirmative defense. *See Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013) (internal quotation omitted) ("[T]he assertion of an affirmative defense may be considered properly on a motion to dismiss where the allegations in the complaint suffice to establish the defense."); *see also Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013) ("When an affirmative defense is obvious on the face of a complaint, . . . a defendant can raise that defense in a motion to dismiss.")

(emphasis added). The TAC and its prior iterations also establish that Plaintiff's own child provided his PEIP to be contacted by providing the telephone number at issue to Defendant, thereby opting-in to receive Defendant's text messages. Dkt. 10 ¶¶ 32, 42; Dkt. 11-2.; Dkt. 58, ¶¶ 52; *see also* Dkt. 73, ¶¶ 26, 46, 47, 64, 65. Further, the undisputed evidence attached to Plaintiff's prior pleadings (Dkts. 1, 10, 11), and cross-referenced by the TAC (Dkt. 73, ¶ 64 n. 3), show that Plaintiff's child—who Plaintiff concedes is an authorized user of the phone (Dkt. 73, ¶¶ 26 n. 1, 39)— provided Defendant with: (1) the phone number that received the communications at issue in this litigation, (2) his city and state, (3) his date of birth, and (4) his email address. Dkt. 11-2, 11-3. Accordingly, the PEIP exemption applies to the communications sent to Plaintiff's son, and the texts do not constitute "telephone solicitations" under the TCPA's DNC Registry provision. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(f)(15)(i) (expressly exempting from the definition of "telephone solicitation"—a predicate of a DNC Registry claim—calls made with a user's "prior express invitation or permission."). Plaintiff does not (and cannot) plead this necessary element, and thus cannot bring an actionable claim on behalf of her son, herself, or the putative class.

Courts have dismissed TCPA claims on the pleadings where, as here, consent was apparent from the face of the complaint. *See*, *e.g.*, *Reardon v. Uber Techs., Inc.*, 115 F. Supp. 3d 1090, 1098 (N.D. Cal. 2015) (dismissing claim of named plaintiff who provided defendant with their phone number during application for employment for failing to state TCPA violation on consent grounds); *Dolemba v. Kelly Servs., Inc.*, 2017 WL 429572, at *4 (N.D. Ill. Jan. 31, 2017) (dismissing TCPA claim with prejudice where plaintiff "pleaded herself out of court by attaching her employment application, which indicates she consented to receiving calls from Kelly for employment-related purposes"); *Huyge v. Gold's Gym Franchising, LLC*, 2014 WL 11515701, at *3 (D. Ariz. July 3, 2014) (granting motion to dismiss on grounds of express consent where face of complaint showed

1   plaintiff provided defendant with his telephone number when applying for a gym
2   membership); *Aderhold v. Car2go N.A., LLC*, 2014 WL 794802, at *7 (W.D. Wash.
3   Feb. 27, 2014), *aff'd*, 668 F. App'x 795 (9th Cir. 2016) (granting motion for
4   judgment on the pleadings where plaintiff's consent to be contacted was apparent
5   from contractual provisions referenced in complaint); *Murphy v. DCI Biologicals*
6   *Orlando, LLC*, 2013 WL 6865772, at *5 (M.D. Fla. Dec. 31, 2013), *aff'd*, 797 F.3d
7   1302 (11th Cir. 2015) (granting motion to dismiss where plaintiff alleged he
8   "voluntarily provided [defendant] with his cellular telephone number when filling
9   out the New Donor Information Sheet."). The Court should act similarly here and
10  dismiss the TAC.

11      Defendant anticipates Plaintiff will argue that PEIP must satisfy the "prior
12  express written consent" ("PEWC") requirements under the TCPA's implementing
13  regulations, and thus cannot be determined without an evaluation of whether there
14  was a clear and conspicuous disclosure required by 47 C.F.R. § 64.1200(f)(9). This
15  is incorrect. PEWC is only applicable to calls placed via an automated telephone
16  dialing system or which utilize a prerecorded message. *See In the Matter of Rules &*
17  *Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830,
18  1838, 1841–42 (2012) ("**[W]e require prior express written consent for all**
19  **telephone calls using an automatic telephone dialing system or a prerecorded**
20  **voice to deliver a telemarketing message to wireless numbers and residential**
21  **lines**." [. . .] "Moreover, in adopting these rules today, we employ the flexibility
22  Congress afforded to address new and existing technologies **and thereby limit the**
23  **prior express written consent requirement to autodialed or prerecorded**
24  **telemarketing calls**.") (emphasis added). Here, the TAC does not allege that
25  Defendant employed an ATDS. *See* Dkt. 73. Moreover, the Ninth Circuit recently
26  determined that text messages—the only communications at issue here—do not
27  qualify as "artificial or prerecorded voice" calls under the TCPA. *Trim v. Reward*
28  *Zone USA LLC*, 76 F.4th 1157, 1162 (9th Cir. 2023). Accordingly, the PEWC

requirements do not apply. Defendant need only show that Plaintiff's son provided his PEIP as separately defined within the National DNC Registry section of the TCPA regulations. 47 C.F.R. § 64.1200(c)(2)(ii). As demonstrated above, PEIP has been met.

### 2.    Plaintiff Cannot Recover on Her Individual Claim Due to Her Son's Prior Express Invitation or Permission.

The TAC confirms that Plaintiff authorized her son to use the phone in question. *See id.*, ¶¶ 26 n.1 ("Both [Plaintiff] and ***her minor son used*** the subject phone. The phone was sometimes in [Plaintiff's] possession and ***sometimes in her son's possession***."), 39 ("[Plaintiff] would at times, ***allow her minor son to use that phone***"); *see also id.*, ¶ 42 (alleging that Plaintiff registered the phone number on the National DNC Registry "***to protect her minor son from being inundated*** with advertisers and data-miners.") (emphases added). Plaintiff does not plead any facts to the contrary or otherwise deny this is the case.

Instead, Plaintiff appears to allege that this permission, and the fact that her son provided the phone number to Defendant for the very purpose of receiving text messages, is of no moment because children are not considered "subscribers" under the TCPA. *Id.*, ¶¶ 55–66. This position finds no support in the law. Plaintiff's reference to 47 C.F.R. § 64.1100(h), which defines a "subscriber" as an "adult person," is inapposite. *See id.* Section 64.1100(h) is *not* a part of the TCPA's implementing regulations. Instead, Section 64.1100 represents the implementing regulations of 47 U.S.C. § 258(a), "the federal prohibition on 'slamming'—the practice in which a telecommunications carrier switches a consumer's telephone service without the consumer's consent." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1112 (9th Cir. 2008). As the Ninth Circuit explained in *Clark*, Congress authorized the FCC to "prescribe procedures for the award of damages when the verification procedures in § 258(a) are violated. Under this delegation of authority, the FCC established detailed and comprehensive procedures which

telecommunications carriers must follow to verify a subscriber's consent to a carrier change, and established the penalties for violations." *Id.* at 1113. These regulations are codified in 47 C.F.R. § 64.1100, *et seq. Id.* at 1113, n. 2, n. 3; *see also AT&T Corp. v. F.C.C.*, 323 F.3d 1081, 1082 (D.C. Cir. 2003) (describing Section 64.1100 as the policies and procedures implemented by the FCC to enforce the anti-slamming statute); *Trans Nat. Commc'ns, Inc. v. Overlooked Opinions, Inc.*, 877 F. Supp. 35, 40 (D. Mass. 1994) ("[T]he FCC acted in 1992 by issuing a formal regulation specifically addressing the telemarketing activities of long distance carriers" by implementing 47 C.F.R. § 64.1100, *et seq.*) (citing *In the Matter of Policies and Rules Concerning Changing Long Distance Carriers*, 7 F.C.C. Reg. 1038 (1992) at ¶¶ 3, 4.).

Attempts to apply the definitions in Section 64.1100 to claims arising out of the TCPA and its own implementing regulations have been unsuccessful. *See Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643 (4th Cir. 2019). In *Krakauer v. Dish Network*, defendant Dish Network appealed the district court's order granting class certification of a DNC class, as well as the judgment entered against it at trial. *Id.* at 652. The district court certified a class of all persons who received violative texts from Dish Network while their numbers were on the DNC list. *Id.* at 656. Dish Network believed the class to be overbroad, arguing that "the TCPA's private cause of action for violations of the Do-Not-Call registry can only be brought by telephone *subscribers*, meaning chiefly the individuals who are 'responsible for the payment of the telephone bill,' 47 C.F.R. § 64.1100(h), rather than any *person* who received an improper call." *Id.* (emphasis in original). The Fourth Circuit categorically rejected this construction:

> The text of the TCPA notes that it was intended to protect 'consumers,' not simply 'subscribers,' who were 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers.' [. . .] The text, purpose, and history all cut against reading the statute as protecting only subscribers. It is highly unlikely that, in the face of such

strong evidence supporting the plain text, that Congress would expect us to infer otherwise. Dish's proposed limit of the class to subscribers is even more dubious when one considers that Congress specifically referenced 'subscribers' in other parts of the TCPA, *see*, *e.g.*, 47 U.S.C. § 227(f)(2), but did not do so here. We assume that Congress chooses its words carefully and does not lightly toss around broad language ('persons') when more precise language ('subscribers') is available. As such, we hold that the cause of action is § 227(c)(5) is not limited to telephone subscribers.

*Id.* at 656–57. *Krakauer*, like nearly every other court to address the scope of the TCPA, confirmed its broad application and reach.

Plaintiff's contention that the TCPA is only applicable to adults also cuts against the broad construction typically afforded to consumer protection statutes, as well as the considerable number of TCPA cases that have allowed minors to recover for violations of the TCPA. *See*, *e.g.*, *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1065 (7th Cir. 2018) (allowing minor's claim under the TCPA to proceed in court after reversing district court's grant of a motion to compel arbitration); *Breslow v. Wells Fargo Bank, N.A.*, 755 F.3d 1265, 1266 (11th Cir. 2014) (affirming judgment for plaintiff in action brought on behalf of minor child who received illegal text messages); *AG v. S. Bay Dreams Coop., Inc.*, 2018 WL 2002370 (S.D. Cal. Apr. 30, 2018), *report and recommendation adopted*, 2018 WL 5099393 (S.D. Cal. Aug. 13, 2018) (approving settlement resolving TCPA claims brought by minor alleging receipt of unauthorized automated texts); *Buchannan for T.B. v. Diversified Consultants, Inc.*, 2014 WL 3907834, at *1 (D. Colo. May 8, 2014) (same); *D.G. v. Diversified Adjustment Serv., Inc.*, 2011 WL 5506078, at *2 (N.D. Ill. Oct. 18, 2011) (allowing minor to pursue claim for violation of TCPA's automated dialing provisions, holding that "[u]nder the statute's broadly-worded right of action provision, D.G. can bring a claim against [defendant]."). Thus, the law clearly permits a minor to maintain an action under the TCPA for the minor's failure to provide consent. Of course, here, the allegations confirm that Plaintiff's son

1    provided the necessary PEIP and thus would be unable to pursue such a claim on

2    that account. *See*, *supra*, at Section VI.A.1.

3         Not only are minors within the class of persons the TCPA was designed to

4    protect, but they are also capable of providing their consent under California law.

5    *See*, *e.g.*, *Lopez v. Kmart Corp.*, 2015 WL 2062606, at *4 (N.D. Cal. May 4, 2015)

6    ("California law plainly provides that a minor has the capacity to contract, with the

7    exception of those contracts specifically prohibited.") (citing Cal. Civ. Code § 1557

8    and Cal. Family Code § 6700); *C.M.D. v. Facebook, Inc.*, 2014 WL 1266291, at *3

9    (N.D. Cal. Mar. 26, 2014), *aff'd sub nom. C.M.D. ex rel. De Young v. Facebook,*

10   *Inc.*, 621 F. App'x 488 (9th Cir. 2015) ("[T]he basic presumption is that minors do

11   have the power to enter into binding contracts."). So too in Texas where Plaintiff

12   and her son reside. *See*, *e.g.*, *Dairyland Cty. Mut. Ins. Co. of Texas v. Roman*, 498

13   S.W.2d 154, 158 (Tex. 1973) ("While the contract of a minor is not void, it is

14   voidable at the election of the minor. This means that the minor may set aside the

15   entire contract at his option, but he is not entitled to enforce portions that are

16   favorable to him and at the same time disaffirm other provisions that he finds

17   burdensome."). There are no allegations that either Plaintiff or her son revoked his

18   consent to be contacted by Defendant. *See* Dkts. 1, 10, 58, 73. Therefore, Plaintiff's

19   son does not have a recoverable claim.

20        Neither does Plaintiff. While Plaintiff has Article III *standing* to pursue the

21   claim, the Ninth Circuit expressly recognized the challenges that Plaintiff would

22   have on the merits and as a class representative. *Hall*, 72 F.4th at 983. The Ninth

23   Circuit directed this Court to determine on remand "[t]he issues of whether Hall's

24   son consented to receive messages, and whether such consent would be sufficient to

25   satisfy the TCPA[.]" *Id.* at 991.

26        Plaintiff is bound by her son's consent. *See In the Matter of Rules & Reguls.*

27   *Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961 (2015)

28   ("2015 Order"). The FCC's 2015 Order determined that under the TCPA's

autodialing statute, "the 'called party' is the subscriber, i.e., the consumer assigned the telephone number dialed and billed for the call, *or* the non-subscriber customary user of a telephone number included in a family or business calling plan. Both such individuals can give prior express consent to be called at that number." *Id.* at 8001, ¶ 73 (emphasis added). While the FCC was discussing the definition of "called party" in reference to the TCPA's automated calling provision, 47 U.S.C. § 227(b), its rationale in recognizing that multiple people can provide consent to be contacted at a shared number applies in equal force here:

> We find it reasonable to include in our interpretation of 'called party' individuals who might not be the subscriber, but who, **due to their relationship to the subscriber, are the number's customary user and can provide prior express consent for the call**. In construing the term "prior express consent" in section 227(b)(1)(A), we consider the caller's reasonableness in relying on consent. **The record indicates that it is reasonable for callers to rely on customary users, such as a close relative on a subscriber's family calling plan** or an employee on a company's business calling plan, because the subscriber will generally have allowed such customary users to control the calling to and from a particular number under the plan, including granting consent to receive robocalls. The caller in this situation cannot reasonably be expected to divine that the consenting person is not the subscriber or to then contact the subscriber to receive additional consent. **To require callers to ignore consent received from customary users in this context would undermine the full benefits of these calling plans for such users and place additional unwanted burdens on the actual subscribers**.

*Id.* at 8001-002, ¶ 75 (emphasis added). *See also Leyse v. Bank of Am. Nat. Ass'n,* 804 F.3d 316, 327 n. 15 (3d Cir. 2015) ("[I]n [a] recent declaratory order . . ., the FCC defined the 'called party' as the 'subscriber' or 'customary user' of the phone number and found that it was 'reasonable for callers to rely' on 'consent to receive robocalls' from *either* type of called party. By this logic, [both the subscriber and his roommate] would ... qualify as 'called parties,' and consent from *either* would shield [defendant] from liability.") (emphasis added).

1    There is no reason grounded in fact, law, or policy for why the DNC Registry
2    provision should be treated differently. Indeed, the Ninth Circuit recognized that the
3    same concerns are present in the DNC context: "The Do-Not-Call Registry lists
4    numbers, not names. A telemarketer ordinarily does not know if consent to receive
5    telephone messages comes from the subscriber of a particular number or some other
6    user. We recognize that allowing lawsuits to proceed when the ultimate phone user
7    consents may cause telemarketers difficulties, even if such consent means that any
8    such suit will ultimately fail on the merits." *Hall*, 72 F.4th at 990 n.8. Plaintiff
9    cannot avoid the PEIP provided by her son, a customary user of the phone, by
10   bringing a claim in her own right.

11    Plaintiff's individual claim is not viable, and the TAC should be dismissed in
12   its entirety under Rule 12(b)(6) as a result.

**B.    Alternatively, or In Addition, Plaintiff's Class Allegations Should be Stricken on the Pleadings for their Numerous Failures.**

15    Even if the Court elects not to dismiss the TAC on the grounds of PEIP, the
16   allegations illustrate that this case cannot be adjudicated on a class basis.

17    The Ninth Circuit permits class allegations to be stricken at the pleading
18   stage. *See Kamm v. California City Dev. Co.*, 509 F.2d 205, 212 (9th Cir. 1975). A
19   motion to strike class allegations may be granted when "the complaint demonstrates
20   that a class action cannot be maintained on the facts alleged." *Sanders v. Apple Inc.*,
21   672 F.Supp.2d 978, 990 (N.D. Cal. 2009). While striking these allegations at the
22   pleading stage is strong medicine, the primary reason courts typically deny these
23   motions as premature—that "the shape and form of a class action evolves only
24   through the process of discovery"—is not present here. *See In re Wal-Mart Stores,*
25   *Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 615 (N.D. Cal. 2007). Where, as
26   here, "the defendant advances a legal argument based on the pleadings, discovery is
27   not necessary for the court to evaluate whether a class action may be maintained.
28   Particularly given that Rule 23(c)(1)(A) instructs courts to determine whether a class

may be certified '[a]t an early practicable time,' courts may—and should—address the plaintiff's class allegations when the pleadings are facially defective and definitively establish that a class action cannot be maintained." *Wright v. Fam. Dollar, Inc.*, 2010 WL 4962838, at *1 (N.D. Ill. Nov. 30, 2010) (striking class claims at the pleading stage). Plaintiff's class allegations should be stricken because the face of the TAC makes readily apparent that a class cannot be certified here.

1.    **Plaintiff's Claim is Subject to Unique Defenses, Rendering Her Claims Atypical and Making Her an Inadequate Class Representative.**

For a class action to be certified, the named plaintiff must be able to demonstrate that their "claims and defenses are typical" and they can adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(3); *Hanon v. Dataproducts Crop.*, 976 F.2d 497, 508 (9th Cir. 1992). The Ninth Circuit has articulated that the test for typicality is that the named plaintiff's claims arise from the "same or similar injury" as other members of the class and that "other members of the class have been injured by the same course of conduct." *Id.* at 508 (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)). A class may not be certified "where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Id.* (holding that plaintiff failed to satisfy typicality requirement of Rule 23(a)(2) where plaintiff's "unique background and factual situation require him to prepare to meet defenses that are not typical of the defenses which may be raised against other members of the proposed class"); *Koos v. First Nat. Bank of Peoria*, 496 F.2d 1162, 1164 (7th Cir. 1974) ("Where it is predictable that a major focus of the litigation will be on an arguable defense unique to the named plaintiff or a small subclass, then the named plaintiff is not a proper class representative.") The concern is that class members' interests will be negatively impacted if the named plaintiff's advocacy is consumed by issues relevant only to their specific claims. *See Hanon*, 976 F.2d at 508 ("We agree that a named plaintiff's

motion for class certification should not be granted if 'there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.'") (citation omitted). Addressing the class allegations on the pleadings is appropriate where "the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982). "Needless to say, a representative party is not typical of class members if he consented to the challenged activity." *Lightbourne v. Printroom Inc.*, 307 F.R.D. 593, 604 (C.D. Cal. 2015).

Plaintiff seeks to represent a class of "***all*** persons . . . who (1) were subscribers to a telephone number; that (2) received more than one telephone call or text message from Defendant on that phone during a 12-month period; (3) whose phone numbers were listed on the Do Not Call Registry for more than 31 days at the time the calls/texts were received." *Id.*, ¶ 73 (emphasis added). Plaintiff's claim is atypical for this putative class because (1) Plaintiff shared the phone with another person, (2) that person (not Plaintiff) provided prior express invitation or permission, and (3) that person was a minor. In other words, Plaintiff's claim is subject to arguments and defenses that are unique to her individual claim, including those arising out of the fact that she was not the sole user of the phone number and that she shared this number with a minor. The question of whether a minor can provide such permission is unique to Plaintiff. So too is the question of whether a subscriber can recover for calls consented to by another user of the phone. *See*, *supra*, Section VI.A.2.

On appeal, the Ninth Circuit acknowledged these issues were "relevant only to the merits of Hall's claim." *Hall*, 72 F.4th at 991. Since the panel only addressed Plaintiff's Article III standing, it reserved for this Court the decision of "who qualifies as a consumer or relevant third-party, how consent is demonstrated, whether a minor can give such consent, and, if so, what law a court should look to in

evaluating consent." *Id.* at 989, n. 7; *see also id.* at 985 n.1 ("Whether [Plaintiff's child] in fact solicited the messages, and whether his consent would be legally sufficient under the TCPA, are inquiries reserved for the merits."). But all of these merits issues and defenses are not capable of being litigated on a class basis.

*Banarji v. Wilshire Consumer Cap., LLC*, 2016 WL 595323 (S.D. Cal. Feb. 12, 2016), is instructive here. The plaintiff in *Banarji* was the fulltime caregiver of her father. *Id.* at *1. Plaintiff's father took out a loan at a bank and provided the bank with plaintiff's telephone number as his point of contact. *Id.* Plaintiff brought TCPA claims against the bank for calls placed to her father after he defaulted on his debt. *Id.* Defendant filed a motion to strike the class allegation, or, in the alternative, a motion to deny class certification challenging "[p]laintiffs [sic] ability to meet the typicality requirement in Rule 23(a)(3)." *Id.* at *3. The court granted the motion to deny class certification, holding:

> While it is true that Plaintiff was probably annoyed by unwanted robocalls, which would be the expected sentiment of the proposed class, Plaintiff's case is unique to herself and perhaps a small subset of the class. Plaintiff's phone number was given to [defendant] by her father. Plaintiff's father indicated that Plaintiff's phone number was in fact his own. And, based upon the circumstances of how the Banarji family looks after one another, Plaintiff's father may be a non-subscriber customary user of the phone line, which would give him the authority to consent to receiving robocalls on that line. As such, the majority of the proposed class may suffer as Plaintiff will be engrossed with disputing [defendant]'s arguments regarding Plaintiff's individual case.

*Id.* at *3. The court found the motion ripe for adjudication at an early stage in the proceedings since "the evidence [p]laintiff seeks to discover will not affect the uniqueness of [p]laintiff's case."

Plaintiff's circumstances here echo those of the atypical class representative in *Banarji*. A third-party customary user of the telephone provided consent to be contacted at Plaintiff's number. Dkt. 73, ¶¶ 8, 9, 12, 26 n. 1, 39, 45–47, 55–66.

Courts in the Ninth Circuit regularly determine that plaintiffs subject to a unique defense of affirmative consent are atypical. *See, e.g., Bridge v. Credit One Fin.*, 294 F. Supp. 3d 1019, 1034 (D. Nev. 2018) (denying class certification on typicality grounds where defendant argued plaintiff consented to receiving calls meant for his mother when he associated his phone number with his mother's delinquent account); *Sapan v. Veritas Funding, LLC*, 2023 WL 6370223, at *4 (C.D. Cal. July 28, 2023) (denying motion for class certification where plaintiff appeared to have invited the calls, since "even if, as he alleges, Plaintiff's words and conduct did not indicate consent for Defendant to contact him, Defendant will understandably spend substantial time at trial eliciting testimony and arguing that he did, likely to the class's detriment.") (internal citations and quotations omitted); *Wiley v. Am. Fin. Network, Inc.*, 2023 WL 4681538, at *3 (C.D. Cal. July 3, 2023) (holding similarly).

This action will be spent litigating whether the actions of Plaintiff's son provided Defendant with consent to contact their shared telephone number. The interests of other putative class members, whose claims do not involve issues of cell phone sharing between parent and child, or whether a minor can provide consent to be contacted, will undoubtedly suffer with Plaintiff as their representative. Accordingly, based on the facts alleged in the TAC, Plaintiff is subject to unique defenses, rendering her claims atypical and undermining her ability to act as an adequate class representative. The class allegations should be stricken to avoid a waste of judicial resources.

### 2. Individualized Inquiries Will Predominate.

To the extent Plaintiff purports to represent a class of others like herself, determining membership in that class would require thousands of mini trials to determine whether each individual class member shares their phone number with another user, whether that other user is or is not a minor, and whether that other user provided prior express invitation or permission (*or* is subject to another applicable exemption). *See* Dkt. 73 ¶ 75 (alleging that "Plaintiff reasonably believes that

hundreds or thousands of people have been harmed by Defendants' actions."). Class certification is denied where individualized issues predominate, and Plaintiff cannot establish commonality. Fed. R. Civ. P. 23(a)(2); *Connelly v. Hilton Grand Vacations Co., LLC,* 294 F.R.D. 574, 578 (S.D. Cal. 2013). Plaintiff's own atypicality (*Supra* Section VI.B.1.) is evidence that this assessment would require individualized inquiries *even for those numbers that provided prior express invitation or permission to be contacted*. Plaintiff does not dispute that her child, an authorized and customary user of the phone, provided Defendants with Plaintiff's number and permission to be contacted at that number. Dkt. 73 ¶¶ 12, 14, 26 n. 1, 38, 40, 44, 45–47, 64 n. 3; Dkt. 10 ¶ 41, Dkt. 11 Exs. A–C. This creates a circumstance where the issues and defenses could vary from class member to class member. Specifically, further inquiry would need to be made into at least the following issues: (1) whether the number was provided by a minor, (2) whether the minor had their parent's authorization to use the number, (3) whether the agreement to be contacted was disaffirmed, and (4) whether the parent or child was the primary user of the telephone. [4] This is untenable, unmanageable, and unreasonable. *See Tomaszewski v. Circle K Stores Inc.*, 2021 WL 2661190, at *3 (D. Ariz. Jan. 12, 2021) (striking TCPA class claims at the pleading stage, holding that, "[a]llowing the class allegations as currently proposed, would be 'palpably unfair to the Defendant' because the Defendant would be required to perform an inquiry in order to ascertain why each individual was messaged and whether Defendant would claim

---

[4] "[A] minor may enter contracts for personal property if it is within their immediate possession or control. [. . .] The contract between [minor] and [plaintiff] is voidable, not void, subject to disaffirmance." *Jain v. Tesla Inc.*, 2022 WL 20611265, at *4 (N.D. Cal. Oct. 12, 2022); *I.B. ex rel. Fife v. Facebook, Inc.*, 905 F. Supp. 2d 989, 1004 (N.D. Cal. 2012) ("Plaintiffs cite no authority that a parent has an independent right to disaffirm contracts entered into by their children, when not acting in a representative capacity on behalf of the minor. Section 6710 clearly provides that 'a contract of a minor may be disaffirmed by the minor before majority or within a reasonable time afterwards,' reflecting the principle that the power of avoidance is personal to the minor."); *Imber-Gluck v. Google, Inc.*, 2014 WL 3600506, at *3 (N.D. Cal. July 21, 2014) ("The power to disaffirm a minor's contract does not extend to the minor's parents.")

1  that consent was obtained for each recipient in the same manner as the named
2  Plaintiffs.").

3      As demonstrated, Plaintiff's putative class definition fails on the face of the
4  pleadings. Allowing this case to proceed as a putative class action would be a
5  manifest waste of the Court's and the parties' resources because the class is
6  ultimately not certifiable. As such, Plaintiff's class claims should be stricken.

7  **VII.  ANY DISMISSAL SHOULD BE WITH PREJUDICE**

8      Plaintiff has already had ***four*** opportunities to plead a viable claim against
9  Defendant. *See* Dkts. 1, 11, 58, 73. Where a plaintiff has had this many bites at the
10  apple to sufficiently plead a claim, courts will deny further amendment as futile and
11  unduly prejudicial. *See Lesnik v. Eisenmann SE*, 374 F. Supp. 3d 923, 946 (N.D. Cal.
12  2019) (finding "leave to amend would be futile and unduly prejudicial to Moving
13  Defendants. Plaintiffs have already had 4 opportunities to clearly state and allege facts
14  in support of their claims.") (internal citation omitted); *see also Leadsinger, Inc. v.
15  BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008) (affirming dismissal of
16  complaint with prejudice on grounds of futility). The Court should rule similarly here.

17  **VIII.  CONCLUSION**

18      For the foregoing reasons, Defendant respectfully requests that the Court
19  dismiss the TAC in its entirety under Rule 12(b)(6) and/or strike Plaintiff's class
20  allegations from the TAC under Rules 12(f) and 23. In either case, this order should
21  be with prejudice.

23  Dated:  December 29, 2023        MANATT, PHELPS & PHILLIPS, LLP

25                      By:  /s/Alexandra N. Krasovec
26                           Alexandra N. Krasovec
                             Cody A. DeCamp
27                           Marah A. Bragdon
                             Attorneys for Defendant
28                           Mythical Venture, Inc. d/b/a "Smosh"

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

1
2
3 **CERTIFICATE OF COMPLIANCE**
4          The undersigned, counsel of record for Defendant Mythical Venture, Inc.,
5 certifies that this brief contains 6,937 words, which complies with the word limit of
6 L.R. 11-6.1.
7
8 Dated:  December 29, 2023          MANATT, PHELPS & PHILLIPS, LLP
9
10                                                   By:  /s/Alexandra N. Krasovec
                                                             Alexandra N. Krasovec
11                                                          Cody A. DeCamp
                                                             Marah A. Bragdon
12                                                          Attorneys for Defendant
                                                             Mythical Venture, Inc. d/b/a "Smosh"
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28