KIMMEL & SILVERMAN, P.C.
Jacob U. Ginsburg, Esq.(*pro hac vice*)
Craig T. Kimmel, Esq. (*pro hac vice*)
30 E. Butler Ave.
Ambler, PA 19002
(267) 468-5374
jginsburg@creditlaw.com
kimmel@creditlaw.com
teamkimmel@creditlaw.com

BUTSCH ROBERTS & ASSOCIATES LLC
Christopher E. Roberts (*pro hac vice* pending)
7777 Bonhomme Avenue, Suite 1300
Clayton, Missouri 63105
Phone: (314) 863-5700
CRoberts@butschroberts.com

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

# LOS ANGELES DIVISION

| | |
|---|---|
| KRISTEN HALL, *individually and on behalf of all others similarly situated,* | Case No.: 2:23-cv-10324-JFW-KES |
| Plaintiff, | PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS |
| v. | Hearing: January 29, 2024 |
| MYTHICAL VENTURE, INC. | Hon. John F. Walter |
| Defendant. | Complaint Filed: Oct. 28, 2021<br>TAC Filed: Nov. 13, 2023<br>Transferred: Dec. 13, 2023 |

# **TABLE OF CONTENTS**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT……..……..…1

II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY…….3

III.    STANDARD…………………………………………………… 5

    A.    Standard for Motion to Dismiss…………………………………5

    B.    Standard for Motion to Strike……………………………………5

IV.    ARGUMENT………………..……………………………………6

    A.    Smosh fails to establish its affirmative defense of consent….….. 6

      1.    Smosh presents no evidence of prior express written consent or express invitation or permission………………………………7

      2.    Smosh fails to establish the terms of any purported agreement or that that such terms were clear and conspicuous………………..10

    B.    Smosh's affirmative defense of consent also fails because a minor cannot consent as a "subscriber" (or on a subscriber's behalf) under Section 227(c) of the TCPA………………………………..15

    C.    Smosh's motion to strike class allegations should be denied…….21

    D.    the extent the Court is inclined to grant the motion to dismiss and/or strike, Hall seeks leave to amend………………..…24

V.    CONCLUSION……………………………………………………25

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*Aderhold v. Car2go N.A., LLC*
　　　2014 WL 794802 (W.D. Wash. Feb. 27, 2014)………………………13-15

*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)……………………..…...…….…4-5

*Banarji v. Wilshire Consumer Cap., LLC*
　　　2016 WL 595323 (S.D. Cal. Feb. 12, 2016)… …………………...……23

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)……………………………5

*Berman v. Freedom Fin. Network, LLC,* 30 F.4th 849 (9th Cir. 2022) …10-12,14

*Bourne Valley Court Trust v. Wells Fargo Bank, NA*
　　　832 F.3d 1154, 1159 (9th Cir. 2016)…… …………………………………17

*Cholakyan v. Mercedes-Benz USA, LLC,*
　　　796 F. Supp. 2d 1220, 1245 (C.D. Cal. 2011)…….. …………….………5

*Dolemba v. Kelly Servs., Inc.,* 2017 WL 429572 (N.D. Ill. Jan. 31, 2017) ……13

*Faucett v. Move, Inc.*, 2023 WL 2563071 (C.D. Cal. Mar. 17, 2023)……..……9

*Gaker v. Citizens Disability, LLC,* 654 F. Supp. 3d 66, 77 (D. Mass. 2023)……13

*Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983 (9th Cir. 2023)…………….....*passim*

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992)……...…...………24

*Huyge v. Gold's Gym Franchising, LLC*, 2014 WL 11515701
　　　(D. Ariz. July 3, 2014)……………………………..………….....13

*Harrington v. Roundpoint Mortgage Servicing Corp.*
    290 F. Supp. 3d 1306, 1317 (M.D. Fla. 2017)...........................19

*Leyse v. Bank of Am. Nat'l Ass'n*
    804 F.3d 316, 327 n. 15 (3d Cir. 2015)..........................19

*Magna Dev. Co. v. Reed*, 39 Cal. Rptr. 284 (Cal. Ct. App. 1964)..............8

*Orsatti v. Quicken Loans, Inc.*, 2016 WL 7650574
    (C.D. Cal. Sep. 12, 2016)................................12

*Osorio v. State Farm Bank, F.S.B.*
    746 F.3d 1242, 1254 (11th Cir. 2014)..........................19

*People v. Jacobs*, 729 P.2d 757, 763 (Cal. 1987)......................14, 20

*Pepka v. Kohl's Dep't Stores, Inc.*
    2016 WL 8919460, at *1 (C.D. Cal. Dec. 21, 2016)...................21

*Physicians Healthsource, Inc. v. Cephalon, Inc.*
    954 F.3d 615, 622 (3d Cir. 2020)............................12

*Portillo v. ICON Health & Fitness, Inc.*
    2019 WL 6840759 (C.D. Cal. Dec. 16, 2019) ........................21

*Quijada v. Brinker Rest. Corp.*
    2015 WL 13915010 (C.D. Cal. Sep. 9, 2015).......................21

*Reardon v. Uber Techs., Inc.*
    115 F. Supp. 3d 1090 (N.D. Cal. 2015)............................13

*Tarantino v. Gawker Media, LLC*
    2014 WL 2434647, at *5 (C.D. Cal. Apr. 22, 2014)..................24

*Tomaszewski v. Circle K Stores Inc.*
    2021 WL 2661190, at *2-4 (D. Ariz. Jan. 12, 2021)…………………24

*Van Patten v. Vertical Fitness Group, LLC*
    847 F.3d 1037 (9th Cir. 2017)……………………………..…………6,8

**Statutes, Rules and Regulations**

47 U.S.C. § 227*, et seq.*… …………………………………………….*passim*

47 C.F.R. § 64.1100(h)…..………………………………...………17-18

47 C.F.R. § 64.1200(c)…………………………………….…………*passim*

Rule 12(b)(6)………………………………………………....………..5

Rule 12(f)…………………………………………………...………..5

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Mythical Venture, Inc. d/b/a Smosh ("Smosh" or "Defendant") seeks to dismiss Plaintiff Kristen Hall's ("Hall" or "Plaintiff") complaint, based on its affirmative defense of consent to Hall's claim under Section 227(c) of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). ECF No. 102. However, as Smosh admits, to succeed on this affirmative defense, Smosh must show it had the "express invitation or permission of the subscriber . . . evidenced by a signed, written agreement between the consumer and seller which states that the consumer agrees to be contacted by this seller and includes the phone number to which the calls may be placed." ECF No. 102, p. 16 (citing TCPA regulations).

Online contracts, such as the purported "agreement" Smosh bases its motion, require a clear and conspicuous disclosure of the contract's critical terms and unambiguous evidence of acceptance of those terms. Smosh does not even *identify* the terms of the supposed contract, must less show a clear and conspicuous disclosure. Therefore, Smosh cannot establish its contract-based affirmative defense of "consent".

Furthermore, section 227(c) of the TCPA, and the rules relating to the do-not-call registry were enacted specifically to protect do-not-call subscribers and to honor the expectation of privacy, associated with the boundaries that the subscribers established through placing their numbers on the do-not-call registry.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
Case No. 2:23-cv-10324-JFW-KES

Section 227(b) and 227(c) of the TCPA differ from each other in a critical respect. Section 227(b) protects the privacy rights of the "called party", which can be either the subscriber or a customary user of a phone. Section 227(c) on the other hand, specifically protects the boundaries established by the *subscriber*.

The FCC, pertinent regulations and relevant case law make clear that only the subscriber himself/herself, or an adult authorized to consent on behalf of the consumer, are permitted to remove the boundary established by placing a number on the do-not-call registry. Accordingly, only the subscriber, or an adult authorized to consent on the subscriber's behalf, can provide valid consent to receiving telemarketing calls, in connection with a claim asserted under 227(c). Because Smosh claims to have obtained "consent" from Hall's son when it knew he was only 13-years-old, it cannot defeat the 227(c) claim on the basis of consent.

Finally, Smosh asks the Court to take the drastic remedy of striking Hall's class allegations at the pleading stage. However, this remedy is improper as Hall will be able to certify a class of "subscribers" similarly situated to her. Furthermore, where all members are Do-Not-Call subscribers, and Smosh has a pre-teen/teenage fanbase, Hall's claims are typical of those of the putative class, and class-wide questions will predominate over individualized inquiries. Smosh's motion to strike class allegations is unwarranted procedurally, factually and legally.

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Smosh is an online entertainment and apparel company with an adolescent fan-base. ECF No. 73, ¶ 7.  Smosh sent out numerous text messages promoting its merchandise, on the premise that the persons who provided their phone numbers supposedly "consented" to receiving such messages. *Id.* at ¶ 12. Hall registered the phone number 575-XXX-0669 on the Do-Not-Call Registry in November 2019 to obtain solitude from unwanted telemarketing calls, and to prevent her then-13-year-old son (with whom she shared the phone) from being inundated with calls and messages from telemarketers and data-miners. *Id.* at ¶¶ 41-42. Hall did not consent to receiving marketing messages from Smosh and did not authorize another adult to consent on her behalf. *Id.* at ¶¶ 43-44. From December 2019 through April 2020, Smosh sent a series of telemarketing messages promoting Smosh apparel to the subject phone number, which Hall read and found "irritating, exploitative and invasive." *Id.* at ¶¶ 52-53.

The Eastern District of California granted Smosh's motion to dismiss that Hall was not the "customary user" of the phone, and therefore lacked standing to bring her TCPA claim. *Hall v. Smosh Dot Com, Inc.,* 72 F.4th 983, 985 (9th Cir. 2023). The Ninth Circuit reversed, holding:

> Hall has standing to bring her TCPA claim by virtue of her status as the subscriber and owner of the phone, and her allegation that the phone received unsolicited text messages in violation of the TCPA. Whether her son in fact solicited the messages, and whether his

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
Case No. 2:23-cv-10324-JFW-KES

consent would be legally sufficient under the TCPA, are relevant
only to the merits of Hall's claim, not to her standing to litigate
… Hall alleges that Defendants texted a phone number that she
owned and subscribed to, contrary to the precise privacy expectations
she vindicated by placing her number on the Do-Not-Call Registry.

*Id.* at 991.

After the matter was remanded, the Parties held several conferrals regarding
the name(s) and role(s) of the various Smosh and Mythical entities, causing Hall
to amend. *See* ECF No. 57; ECF No. 58 (Second Amended Complaint). After
Smosh retained new counsel and filed a motion to dismiss the Second Amended
Complaint on grounds different from those identified by its prior counsel, the
Parties stipulated to Plaintiff filing the Third Amended Complaint after further
conferral regarding the identities and roles of the Smosh/Mythical companies
involved in the marketing campaign. ECF Nos. 72, 73. Smosh also filed an
unopposed motion to transfer to this District, which was granted December 8,
2024. ECF No. 74.

III.   **STANDARD**

A.   **Standard for Motion to Dismiss.**

To survive a motion to dismiss, the plaintiff's complaint "must contain
sufficient factual matter, accepted as true, to 'state a claim to relief that is
plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell
Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Whether a claim is "plausible

on its face" turns on whether the complaint contains sufficient factual allegations to support a reasonable inference that the conduct occurred. *See Iqbal*, 556 U.S. at 678. Further, "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation" of the elements of a cause of action. *Twombly*, 550 U.S. at 555.

### B.    Standard for Motion to Strike.

In ruling on a motion to strike under Rule 12(f), the court must view the pleading in "the light most favorable to the nonmoving party." *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1245 (C.D. Cal. 2011). Thus, "before granting such a motion, the court must be satisfied that there are no questions of fact, that the claim or defense is insufficient as a matter of law, and that under no circumstance could it succeed." *Id.* (internal quotation omitted).

## IV.    ARGUMENT

### A.    Where Smosh cannot identify the terms of the purported "consent" or that those terms were sufficiently disclosed, it cannot obtain dismissal from that affirmative defense.

A "motion to dismiss under Rule 12(b)(6) cannot be granted based on an affirmative defense unless that defense raises no disputed issues of fact." *Tarantino v. Gawker Media, LLC*, 2014 WL 2434647, at *5 (C.D. Cal. Apr. 22, 2014) (Walter, J.) (internal citation and quotation omitted). Under a TCPA claim, "consent is not an element of a plaintiff's prima facie case but is an affirmative

defense **for which the defendant bears the burden of proof**." *Van Patten v. Vertical Fitness Group, LLC, 847 F.3d 1037, 1044 (9th Cir. 2017)* (emphasis added). The Ninth Circuit held in this case that in response to a section 227(c) claim for calls to a number on the National Do-Not-Call registry a "telemarketer may raise an **affirmative defense** to liability if: (i) the call was placed in error and certain procedural requirements were met; (ii) the telemarketer 'has obtained the subscriber's prior express invitation or permission'; or (iii) the telemarketer 'has a personal relationship with the recipient.'" *Hall v. Smosh Dot Com, Inc., 72 F.4th 983, 989 (9th Cir. 2023)* (emphasis added and citing 47 C.F.R. § 64.1200(c)(ii)).

Here, there are disputed issues of fact as Smosh has not established Hall consented to receive the text messages at issue.[1] Smosh presents no evidence of: (1) any written and signed agreement for Hall (or her then 13-year-old son) to receive telemarketing text messages, (2) the terms of any purported agreement, (3) that the terms of any purported agreement were clear and conspicuous; and, (4) that Hall (or her minor son) signed such an agreement. Rather than presenting any evidence or allegations of such a written and signed agreement, Smosh argues that the Court should skip the analysis of the supposed contract's terms, and simply

---

[1] Smosh contorts Hall's characterization of *its* representation that consent was the basis for sending the text messages as though Hall herself conceded her son "consented." ECF No. 72, p. 2 (citing ECF No. 1, ¶ 8); ECF No. 72, p. 4 *citing* ¶ ECF No. 10, ¶ 41. While Hall agrees her son appears to have provided his name, age and the subject phone number on Smosh's website, Smosh has never provided any documentation demonstrating the context to which her son was providing that information and/or the terms that were disclosed.

"infer" that Smosh obtained the requisite consent to send the text messages at issue. ECF No. 102, p. 4. Where a contract cannot be enforced without identifying its terms or assent thereto, Smosh cannot obtain dismissal on its affirmative defense of consent.

1. **The affirmative defenses of prior express written consent or express invitation or permission, must be established by a "signed, written agreement." Smosh presents no evidence of such an agreement.**

In the context of a 227(c) claim brought by a subscriber on the do-not-call registry, "a telemarketer may raise an *affirmative defense* to liability if: (i) the call was placed in error and certain procedural requirements were met; (ii) the telemarketer has obtained the subscriber's prior express invitation or permission…" *Hall*., 72 F.4th 983, 989) citing 47 C.F.R. 64.1200(c)(ii). Such "express invitation or permission" must "be evidenced by a **signed written agreement** between the consumer and the seller." *Id.* (emphasis added).

Instead of presenting any evidence of a purported signed agreement, Smosh presents a red herring - that there is a supposed distinction between "express written consent", as defined by 47 C.F.R § 64.1200(f)(9) and "express invitation or permission" evidenced by a "signed written agreement" as prescribed by 47 CFR 64.1200(c)(ii). *See* ECF No. 102, pp. 9-10. However, such hair-splitting is futile, as a "signed written agreement" is still a contract. Smosh skips a step necessary to enforce any contract – presenting evidence of the purported

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
Case No. 2:23-cv-10324-JFW-KES

contract's terms. *Magna Dev. Co. v. Reed*, 39 Cal. Rptr. 284, 288 (Cal. Ct. App. 1964) (for a contract to be enforceable, its "terms must be complete and certain in all particulars essential to its enforcement").

Rather than identifying the supposed contract's terms, Smosh cites to a strip of data containing personal identifying information of Hall's son. ECF No. 102, p. 8. Smosh asks the Court to skip the step of showing assent to the purported contract's terms step and "infer" what those terms might be. *See* ECF No. 102, p. 4 ("the only reasonable inference to be drawn is that Defendant 'obtained [this] personal data' when Plaintiff's son visited smosh.com and signed up to receive text messages with news and offers related to Smosh at the phone number.") By failing to present evidence of the contract's terms, however, Smosh fails on its affirmative defense of consent.

While it is not in dispute that Hall's son appears to have submitted his information and the subject phone number on the Smosh website, Smosh has repeatedly failed to identify the context of that online submission. In the TCPA context, *Van Patten* rejected the proposition that providing one's phone number means consenting to any and all telephone communications for any purpose, including telemarketing purposes. *Van Patten*, 847 F.3d at 1046. Rather, the Ninth Circuit held a TCPA defendant must show the scope of consent covers the calls/messages at issue:

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
Case No. 2:23-cv-10324-JFW-KES

the FCC has established no rule that a consumer who gives a phone number to a company has consented to be contacted for any reason. Instead, FCC orders and rulings show that the transactional context matters in determining **the scope of a consumer's consent to contact**.

*Id*. (emphasis added).   Likewise, in *Faucett v. Move, Inc*., 2023 WL 2563071 (C.D. Cal. Mar. 17, 2023), Judge Wright also rejected the premise that an online form with a consumer's name and phone number is sufficient to demonstrate express written consent under the TCPA. *Id*. at *3 ("the mere fact that the caller referenced an online form does not show that the online form was sufficient to obtain Faucett's express consent…")

Where Smosh fails to identify the context or scope of purported consent, its motion to dismiss must be denied.

> **2.    Smosh also fails to establish the specific terms of any purported agreement to receive telemarketing messages or that such terms were clear and conspicuous.**

Smosh claims it obtained "consent" from Hall's son online. ECF No. 102, pp. 8-9.[2] The Ninth Circuit case *Berman v. Freedom Fin. Network, LLC,* 30 F.4th 849 (9th Cir. 2022) is instructive on the enforceability of online contracts. While *Berman* is a TCPA case, the Ninth Circuit did not address the statute, but rather two purported online agreements to arbitrate. *Id.* The *Berman* court affirmed the

---

[2] Again, Hall does not dispute her son appears to have submitted his information on Smosh's website. She has still not seen evidence that the website contained telemarketing terms, clearly and conspicuously disclosed.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
Case No. 2:23-cv-10324-JFW-KES

district court's denial of the defendant's motion to compel arbitration, finding the arbitration provisions were not "clear and conspicuous" to a reasonable web user. *Id.* at 858-59.

A website operator seeking to enforce an online contract must show: "(1) the website provides **reasonably conspicuous notice of the terms** to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, **that unambiguously manifests his or her assent to those terms."** *Id.* (emphasis added). For the terms of an online contract to be sufficiently conspicuous, the "notice must be displayed in a font size and format such that the court can fairly assume that **a reasonably prudent Internet user would have seen it**." *Id.* (emphasis added). Ultimately, *Berman* found the purported arbitration provisions were not prominently displayed in a font size, format and color to assure a reasonably prudent web user would see the terms:

> The text disclosing the existence of the terms and conditions on these websites is the antithesis of conspicuous. It is printed in a tiny gray font considerably smaller than the font used in the surrounding website elements, and indeed in a font so small that it is barely legible to the naked eye. …Far from meeting the requirement that a webpage must take steps 'to capture the user's attention and secure her assent,' the design and content of these webpages draw the user's attention away from the most important part of the page.

*Id.* at 856-57.

While the disclosure of the terms in *Berman* was ultimately found insufficient, the defendant in *Berman*, at least presented the court with the terms

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
Case No. 2:23-cv-10324-JFW-KES

and conditions it contended the plaintiffs accepted. *Berman,* 30 F.4th at 853-54, *passim.* The court could therefore analyze whether the font, the color, and the placement of the critical terms were clear and conspicuous to a reasonable web user in the context of the format and design of the website. *Id.* at 856-58. Here, Smosh points to no telemarketing terms whatsoever, and the Court therefore, cannot assess whether they were sufficiently clear and conspicuous.

Smosh also makes the strained argument that a clear and conspicuous disclosure is somehow not required when calling numbers on the Do-Not-Call registry because the "clear and conspicuous" language in 47 C.F.R. § 64.1200(f)(9) references pre-recorded messages and automatic telephone dialing systems. ECF No. 102, pp. 7-8. Smosh argues that the "prior express invitation or permission" referenced in 47 C.F.R. § 64.1200(c)(ii), governing 227(c) claims only references a "signed written agreement" without explicitly referencing "clear and conspicuous disclosure." *Id.* This contorted interpretation of the "consent" standards fails for several reasons, set forth below.

First, it is immaterial which section of the TCPA is at issue, as the "clear and conspicuous disclosure" requirements outlined in *Berman,* exist for **any** purported online contract, such as the one Smosh seeks to enforce here. *See Berman*, 30 F.4th at 856-57. Again, *Berman* did not address the language of the TCPA in its "clear and conspicuous" analysis, but basic contract law. By virtue of

- 11 -

being an online contract, Smosh must prove the purported "signed, written agreement" had terms that were clear and conspicuous.

Furthermore, as the Ninth Circuit explained in this case, "[t]he National Do-Not-Call Registry is directed at preserving the privacy of the residential subscriber who listed their number with the expectation that they would not be contacted by telemarketers." *Hall, 72 F.4th at 989*.    There is no logical reason why telemarketers would be held to a *lower* standard when calling persons who registered their phone number on the do-not-call registry in a 227(c) claim, than persons may not have, under section 227(b).   While Smosh attempts to impose different disclosure requirements for 227(b)'s "prior express consent" and 227(c)'s "express invitation or permission", courts have invariably treated the two terms as synonymous and interchangeable. For instance, the Third Circuit held in no ambiguous terms, "the language's plain meaning and the FCC's interpretation show that 'express consent' is interchangeable with 'express invitation or permission.'" *Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615, 622 (3d Cir. 2020); *see also Orsatti v. Quicken Loans, Inc.*, 2016 WL 7650574, at *6-7 (C.D. Cal. Sep. 12, 2016) (defendant could not prevail on affirmative defense of "express written consent" for 227(c) do-not-call claim); *see also Gaker v. Citizens Disability, LLC*, 654 F. Supp. 3d 66, 77 (D. Mass. 2023) (granting summary judgment to plaintiff on her 227(c) do-not-call claim, applying both *Berman* and

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
Case No. 2:23-cv-10324-JFW-KES

47 C.F.R. § 64.1200(f)(9), where purported "consent" website failed to provide clear and conspicuous disclosure).

The cases relied upon by Smosh in support of a finding of consent at the motion dismiss stage are readily distinguishable or even helpful to Hall's position. ECF No. 102, pp. 8-9. For instance, Smosh relies on *Reardon v. Uber Techs., Inc., 115 F. Supp. 3d 1090 (N.D. Cal. 2015).* ECF No. 102, p. 8. However, in *Reardon,* the court found Uber failed to present evidence that four out of five plaintiffs provided their numbers to be contacted for the <u>purpose</u> it alleged, and therefore denied the motion to dismiss for all but one plaintiff. *Id.* at 1099-1101. The one plaintiff whose case was dismissed, acknowledged providing her phone number in connection with the **purpose** of the purported consent. Smosh also cites *Dolemba v. Kelly Servs., Inc.*, 2017 WL 429572 (N.D. Ill. Jan. 31, 2017). That case also undercuts Smosh's argument as it expressly held, "[t]he form of consent required depends on the content of the call." *Id.* at *3.

Similarly, *Huyge v. Gold's Gym Franchising, LLC*, 2014 WL 11515701 (D. Ariz. July 3, 2014) involved calls relating to gym membership where it was agreed that the plaintiff provided a phone number related such gym membership. Further, in *Aderhold v. car2go N.A. LLC,* the Ninth Circuit held that because the matter did not involve "telephone solicitations", the written consent requirements

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
Case No. 2:23-cv-10324-JFW-KES

for telephone solicitations were not at issue. *Aderhold v. car2go N.A. LLC*, 668 F. App'x 795, 796 (9th Cir. 2016).

The fact Hall's son apparently visited an entertainment group's website and provided his personal data does not mean he consented to telemarketing messages. The authorities cited by Smosh do not bolster its position.

> **B. Smosh's affirmative defense of consent also fails because a minor cannot consent as a "subscriber" (or on a subscriber's behalf) under Section 227(c) of the TCPA.**

Even if Smosh could show a signed, written agreement from Hall's minor son, which sufficiently disclosed telemarketing terms, such consent would still not be valid for Hall's 227(c) claim relating to the Do-Not-Call registry. This is because, as discussed below, a "subscriber" can only be the adult who pays the phone bill, or an adult authorized to enter contracts on behalf of the subscriber.

The proposition that a minor cannot "consent" on behalf of an adult in the context of property and privacy rights, is deeply rooted in the law. For instance, in *People v. Jacobs*, 729 P.2d 757, 763 (Cal. 1987), the California Supreme Court suppressed evidence obtained by the police in an arrestee's home, even though the arrestee's 11-year-old stepdaughter "consented" for the police to enter. The *Jacobs* court explained "parents may choose to grant their minor children joint access and mutual use of the home, parents normally retain control of the home as well as the power to rescind the authority they have given." *Id.* The court held:

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
Case No. 2:23-cv-10324-JFW-KES

"[t]he common sense of the matter is that the…parent has not surrendered his privacy of place in the living room to the discretion of the…child; rather, the latter [has] privacy of place there in the discretion of the former." *Id*.

Just as a minor does not have authority to remove the barriers to outsiders in his/her parents' home, a minor likewise cannot consent to removing the communication barriers established when a subscriber places a phone number on the Do-Not-Call Registry.[3] As the Ninth Circuit explained in this case, the "National Do-Not-Call Registry is directed at preserving the privacy of the residential **subscriber** who listed their number with the expectation that they would not be contacted by telemarketers." *Hall,* 72 F.4th at 989 (emphasis added). Accordingly, the Do-Not-Call Rules were enacted to honor the actions and protect the expectations of the **subscriber**, who affirmatively placed their phone number on the Do-Not-Call Registry.

Because of the distinction as to whose rights, actions and expectations the provisions were enacted to protect, sections 227(b) (which prohibits unlawful robocalls to cell phones) and 227(c) (which protects Do-Not-Call registry subscribers) have different requirements as to which party has authority to consent. A telemarketer can avoid liability on a § 227(b) prerecorded voice claim,

---

[3] While telemarketers may believe in some instances that the subscriber or an adult authorized to act on the subscriber's behalf was the party purportedly consenting, Smosh does not dispute it **knew** Hall's son was 13-years-old.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
Case No. 2:23-cv-10324-JFW-KES

1    upon a showing it had the "prior express consent of the **called party**." 47 U.S.C. §

2    227(b)(1)(A).    The FCC explained the "called party" can be either of "the

3    subscriber, i.e., the consumer assigned the telephone number dialed and billed for

4    the call *or* the non-subscriber customary user." *In the Matter of Rules and*

5    *Regulations Implementing the TCPA of 1991*, 30 F.C.C.R. 7961, at *7999-8001

6    (2015) (emphasis added). Conversely, a section 227(c) Do-Not-Call claim can

7    only be defeated by a showing of express consent of the "subscriber." 47 C.F.R. §

8    64.1200(c)(2)(ii) (telemarketer can avoid liability on a § 227(c) Do-Not-Call

9    claim if it "has obtained the **subscriber's** prior express invitation or

10   permission."(emphasis added))

11         The structure and precise language47 C.F.R. § 64.1200(c)(2)(ii) is critical.

12   After indicating that the "subscriber's" invitation or permission is required, the

13   next sentence of 47 C.F.R. § 64.1200(c)(2)(ii) provides "[s]uch permission must

14   be evidenced by a signed, written agreement between the **consumer** and seller

15   which states that the consumer agrees to be contacted by this seller and includes

16   the telephone number to which the calls may be placed." Notably, the first

17   sentence of 47 C.F.R. § 64.1200(c)(2)(ii) lacks the word "or", before or after the

18   word "subscriber". Likewise, a "consumer's" signature evidences the subscriber's

19   permission.

20

- 16 -

1    A statute must be interpreted "in a way that would not render words or

2    phrases superfluous or make a provision nugatory." *Bourne Valley Court Trust v.*

3    *Wells Fargo Bank, NA*, 832 F.3d 1154, 1159 (9th Cir. 2016). If the term

4    "consumer" in the second sentence of 47 C.F.R. § 64.1200(c)(ii) could be

5    someone who was not authorized to act on behalf of "the subscriber", the first

6    sentence requiring "the **subscriber's** prior express invitation or permission"-

7    would be superfluous.[4] Likewise, if the "consumer" was not either the subscriber

8    or someone authorized to consent on the subscriber's behalf, the "consumer's"

9    signature would not evidence the subscriber's "permission." Accordingly, when

10   reading the totality of 47 C.F.R. § 64.1200(c)(ii) in a manner that does not render

11   words or phrases superfluous, the "consumer" can only be the subscriber or

12   someone who is legally authorized to act on the subscriber's behalf.

13       The FCC common carrier regulations shed light on who can enter into

14   contracts on behalf of a "subscriber", when it defines the term as follows:

15   (1) The party identified in the account records of a common carrier as
         responsible for payment of the telephone bill;

16   (2) Any **adult person** authorized by such party to change
17       telecommunications services or to charge services to the account;
         or

18

---

19   [4] Again, consistent with the goal of protecting residential subscribers, 47 C.F.R. § 64.1200(c)(ii)
     provides no alternative as to whose permission or invitation was required before the sentence
20   ends with a period. (i.e. the first sentence of the provision reads a seller can avoid liability if "it
     has obtained the **subscriber's** prior express invitation or permission." The provision  provision
     **does not** say "the subscriber or other customary user."

- 17 -

(3) Any person contractually or otherwise lawfully authorized to represent such party.

47 C.F.R. § 64.1100(h) (emphasis added). The FCC has repeatedly made clear that a "subscriber" cannot be a minor and that the minor cannot act on a subscriber's behalf. *See generally In re Excel Telecomms., Inc.*, 18 F.C.C.R. 2828, 2829-30 (2003) (a 17-year-old could not authorize transfer of a telecommunications service provider because of the age of the requesting party); *In the Matter of AT&T Corp.*, 21 F.C.C.R. 12709, 12710-11 n. 13 (2006) ("[t]he [13-year-old] person authorizing the switch was, therefore, not an adult as required by our rules.") While these rulings do not specifically address consent under the TCPA, they do address who can and cannot act with authority to bind a subscriber.

The limited TCPA case law on the issue of who can act to bind a "subscriber" with consent, is consistent with the FCC's rulings, and further supports Hall's position. The Eleventh Circuit held that one subscriber may be able to consent to calls to another **adult** in his or her household:

> Parents and cohabitants everywhere would be shocked to learn that every adult in their household is legally entitled to consent to having autodialing debt collectors call any of their cell phones. This is not to say that in some cases one adult might authorize **another adult** to do so, but we cannot say that all cohabitants possess such authority as a matter of law.

- 18 -

*Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1254 (11th Cir. 2014) (emphasis added); *see also Harrington v. Roundpoint Mortgage Servicing Corp., 290 F. Supp. 3d 1306, 1317 (M.D. Fla. 2017)* ("the **subscriber**—here, Harrington—may authorize **another adult** to provide the requisite consent") (emphasis added).

Smosh misleadingly cites authorities holding that the non-subscriber customary user can "consent" as a "called party" under section 227(b). ECF No. 102, pp. 13-14 (citing *See In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961, 8001-8002 (2015) and *Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316, 327 n. 15 (3d Cir. 2015)). Smosh's reliance on these authorities is misplaced. The question of whether a non-subscriber "called party" can provide consent under 227(b) is not at issue, or before the Court. The question is whether the boundaries and expectations of **subscribers** who register their phone numbers on the Do-Not-Call Registry, under section 227(c) - **not a "called party" as defined by** section 227(b) of the TCPA. Furthermore, the 2015 FCC Order and *Leyse* do not address the purported consent of a minor.

Smosh also presents several red herrings regarding minor's ability to contract and the TCPA's relationship with minors. First, Smosh makes a strawman argument by pointing out that are capable of entering into certain

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
Case No. 2:23-cv-10324-JFW-KES

contracts under California law. ECF No. 102, p. 13. However, no one reasonable person would dispute that minors can enter into certain contracts, and not others. (e.g. a 13-year-old is legally permitted to buy candy but not alcohol). What is at issue is whether a minor can provide the requisite consent of a "**subscriber**" who affirmatively registered their phone number on the Do-Not-Call Registry in the context of a section 227(c) TCPA claim. In another strawman argument, Smosh cites cases where minors were found to have *the protections* of the TCPA. ECF No. 102, p. 12. Hall agrees that a minor can be a "called party" under 227(b) with the protections of the robocall provision, as a minor can be a phone's "customary user." Hall however, disputes that a minor can bind a subscriber with "consent" under 227(c). The Court should not be distracted by Smosh's red herring arguments.

Here, Smosh acknowledges that its records show the purportedly "consenting" party was 13-years-old at the time of the purported consent. *See* ECF No. 102, p. 8. Just as the police officers could not have reasonably believed they had valid consent to enter the home in *Jacobs*, Smosh could not have reasonably believed it had the consent of the subscriber or an adult authorized to consent on the subscriber's behalf.

//

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
Case No. 2:23-cv-10324-JFW-KES

**C. Smosh's motion to strike class allegations should be denied.**

As an alternative to dismissal, Smosh seeks to strike Hall's class allegations. ECF No. 102, pp. 15-21. Smosh provides the Court with no substantive basis to resort to this drastic and disfavored remedy.

Motions to strike class allegation are disfavored and rarely granted. That is because "striking class allegations prior to a formal certification motion is generally disfavored due to the lack of a developed factual record." *Pepka v. Kohl's Dep't Stores, Inc.*, 2016 WL 8919460, at *1 (C.D. Cal. Dec. 21, 2016); *see Portillo v. ICON Health & Fitness, Inc.*, 2019 WL 6840759, at *6 (C.D. Cal. Dec. 16, 2019) (Wright, J.) ("courts are hesitant to strike class allegations before the parties have had an opportunity to go through the class certification process"); *Quijada v. Brinker Rest. Corp.*, 2015 WL 13915010, at *2 (C.D. Cal. Sep. 9, 2015) (Walter, J.) (issues raised in motion to strike class allegations are "more appropriately resolved on a motion for summary judgment and/or motion for class certification").

Yet, at the pleading stage, Smosh argues Hall is "atypical" of other putative class members because the subject phone was "shared." ECF No. 102, p. 17. Smosh cites no evidence as to what is "atypical" about sharing a phone (it is common). More importantly, the Ninth Circuit held the Do-Not-Call Registry is aimed at protecting the privacy rights and boundaries set by **"subscribers"**

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
Case No. 2:23-cv-10324-JFW-KES

regardless of how frequently that subscriber uses a given phone. *Hall*, 72 F.4th at 986, 990-91. As a subscriber seeking to represent a class of subscribers, Hall is typical.

Smosh also argues Hall's claim is "atypical" because the person who purportedly gave "consent" is another person, who happens to be a minor. ECF No. 102, p. 17. First, the issue of whether a minor can provide "consent" for a subscriber can consent is inapposite if Smosh's supposed "consent" website does not have a clear and conspicuous disclosure of the telemarketing terms. Accordingly, a class may well be certified without even having to address the question of whether a minor can consent on behalf of a subscriber. Furthermore, if the question of whether a minor can provide requisite consent under 227(c) of the TCPA is addressed, that may be an ideal class-wide question where the class sought to be certified may be narrowed to focus on minors. Hall also rejects the premise that she would be "atypical" among class members on the basis that supposed consent came from a minor. Rather, Hall suspects an overwhelming majority of class members would be similarly situated in that regard. Smosh has a teenage and pre-teen audience, and subscribers to cell phone plans must be "adults". Ultimately, this is why striking class allegations is premature before the benefit of discovery.

1    Moreover, most of the cases cited by Smosh in support of its motion to

2    strike were factually distinguishable and decided at the class certification stage -

3    with the benefit of a developed factual record. *See generally* ECF No. 102, pp. 15-

4    21. For example, *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 500-06 (9th Cir.

5    1992) was decided at the class certification stage after discovery and a

6    considerable factual record had been developed. Smosh also erroneously relies on

7    *Banarji v. Wilshire Consumer Cap., LLC*, 2016 WL 595323, at *1-3 (S.D. Cal.

8    Feb. 12, 2016). In *Banjari*, the defendant-bank obtained consent from the

9    plaintiff's father. *Id.* However, *Banjari* involved a *§ 227(b) claim,* where a

10   customary use can consent as a "called-party". *Id.* Here, Hall's claim is predicated

11   on section § 227(c), which requires the consent of the "subscriber," or an adult

12   authorized to consent on the subscriber's behalf.  Smosh's reliance on *Sapan v*

13   *Veritas Funding, LLC*, 2023 WL 3370223, at *3-6 (C.D. Cal. July 28, 2023) is

14   also misplaced. Unlike this matter, *Sapan* was decided at the class certification

15   stage and involved unique questions about the plaintiff's supposed manifestation

16   of assent.  *See id*. Here, the case is at the pleading stage before discovery has been

17   exchanged, and the questions of whether Smosh's website had clear and

18   conspicuous disclosures and whether a minor can consent on behalf of a

19   subscriber are quintessential class questions. In citing such authorities, Smosh is

20   making Hall's argument that class certification issues should be addressed on class

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
Case No. 2:23-cv-10324-JFW-KES

certification. There is simply no basis for the Court to conclude as a matter of law that such an argument will prevail before discovery or an evidentiary record has been developed.

Finally, one of the few cases where the class allegations were actually stricken is *Tomaszewski v. Circle K Stores Inc*., 2021 WL 2661190, at \*2-4 (D. Ariz. Jan. 12, 2021). That case involved a class definition that was "fail proof" and where commonality would have been impossible to establish, and the Court therefore ordered the plaintiff to file an amended complaint with the deficiencies cured. *See id.* Here, Smosh fails to point to any such deficiencies in the class definition.[5] Accordingly, *Tomaszewski* is inapposite.

### D. To the extent the Court is inclined to grant the motion to dismiss and/or strike, Hall seeks leave to amend.

Where a motion to dismiss is granted, the Ninth Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted. *See, Tarantino v. Gawker Media, LLC*, 2014 WL 2434647, at \*8 (C.D. Cal. Apr. 22, 2014) (Walter, J.); *citing DeSoto v. Yellow Freight System, Inc*., 957 F.2d 655, 658 (9th Cir. 1992). However, a Court does not need to grant leave to amend in cases

---

[5] If the Court does find such deficiencies, Hall requests the Court follow *Tomaszewski* and afford the plaintiff leave to amend to cure the identified deficiencies.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
Case No. 2:23-cv-10324-JFW-KES

where the Court determines that permitting a plaintiff to amend would be an exercise in futility. *Id.*

While Smosh correctly notes that the complaint has been amended three times (ECF No. 102, p. 20), none of those amendments were the result of deficient pleadings. Rather, the original complaint was amended to add a parent-company as a co-defendant (ECF No. 10), and the last two amendments related to the identities of the various Smosh/Mythical companies and confusion arising out of conferral between counsel about same. ECF No. 57, 58, 73. The only time any iteration of the complaint was dismissed, that dismissal was reversed by the Ninth Circuit. *See* ECF No. 48. Accordingly, there have not been repeated failures to cure defects.

Accordingly, if the Court concludes any aspect of the Third Amended Complaint is deficient (including class allegations), Plaintiff seeks leave to file a Fourth Amended Complaint to cure any such deficiency.

**V. CONCLUSION**

For the foregoing reasons, Defendant Mythical Ventures, Inc.'s motion to dismiss and/or strike should be denied.

Respectfully submitted,

**KIMMEL & SILVERMAN, P.C.**

*/s/ Jacob U. Ginsburg*
Jacob U. Ginsburg, Esq.(*phv*)

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
Case No. 2:23-cv-10324-JFW-KES

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

Craig T. Kimmel, Esq. (*phv*)
30 E. Butler Ave.
Ambler, PA 19002
(267) 468-5374
jginsburg@creditlaw.com
kimmel@creditlaw.com
teamkimmel@creditlaw.com

**BUTSCH ROBERTS & ASSOCIATES LLC**
*/s/ Christopher E. Roberts*
Christopher E. Roberts (*phv*)
7777 Bonhomme Avenue, Suite 1300
Clayton, Missouri 63105
Phone: (314) 863-5700
CRoberts@butschroberts.com

Lenny Bush, Esquire (216072)
Bush Law Group
23679 Calabasas Road, Suite 1005
Calabasas, CA 91302
Telephone: (323) 868-1903
bushlawgroup@gmail.com
*Attorneys for Plaintiff*

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
Case No. 2:23-cv-10324-JFW-KES