UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTEN HALL,<br><br>        Plaintiff,<br><br>        v.<br><br>MYTHICAL VENTURE, INC. d/b/a "Smosh",<br><br>        Defendant. | Case No. 2:23-cv-10324-JFW-KES<br><br>Hon. John F. Walter<br><br>**[PROPOSED] STATEMENT OF DECISION**<br><br>Date:      January 29, 2024<br>Time:     1:30 p.m.<br>Courtroom: 7A<br><br>Date Filed: October 28, 2021 |

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

## STATEMENT OF DECISION

## I. INTRODUCTION

Before the Court is Defendant Mythical Venture, Inc.'s ("Mythical") Motion to Dismiss and/or Strike Class Allegations from the Third Amended Complaint (Dkt. 73). Mythical moves to dismiss on the ground that Plaintiff Kristen Hall's son, a regular user of the phone number at issue, provided his Prior Express Invitation or Permission ("PEIP") to receive text messages from Defendant at that number, and that this affirmative defense is apparent from the allegations in the Third Amended Complaint ("TAC"). Mythical also moves to strike the class allegations in the TAC on the ground that Plaintiff is an atypical class representative and that common issues will not predominate in the litigation. For the reasons that follow, Mythical's motion to dismiss and motion to strike are **GRANTED**.

## II. FACTUAL BACKGROUND

The factual allegations are straightforward. Plaintiff alleges that previously named defendant Smosh.com, Inc. ("Smosh")[1] violated the Telephone Consumer Protection Act ("TCPA") 47 U.S.C. § 227, by sending text messages to a phone number she registered on the National Do-Not-Call Registry. 47 C.F.R. § 64.1200.

Plaintiff alleges that she is the subscriber of the phone number 575-XXX-0669, and that she authorized her minor son to use the phone. Third Amended Complaint ("TAC"), ¶¶ 22, 39. Plaintiff alleges that, on or around November 3, 2019, Smosh "obtained the personal data" of Plaintiff's son when he provided his telephone number and other information to Smosh by webform. *Id.*, ¶¶ 25, 28, 45-47. Plaintiff alleges subsequent receipt of five text messages from Smosh at the phone number 575-XXX-0669 between December 25, 2019, and June 29, 2020. *Id.*,

---

[1] Smosh.Com was dissolved while this litigation was pending. During the relevant time periods Mythical Venture, Inc. was Smosh.com's parent company. Dkt. 73, ¶¶ 23, 30. Mythical Venture currently operates the Smosh business, and the Parties agree that it is the proper Defendant.

¶ 31. Plaintiff also alleges that, on September 9, 2021, Defendant's in-house counsel sent an email containing the information collected via this webform, including accompanying evidence. *Id.*, ¶ 36.[2] This correspondence confirms that the phone number, 575-XXX-0669, was entered into Smosh's website on November 3, 2019, along with Plaintiff's son's (1) name, (2) city and state, (3) date of birth, and (4) email address. *Id.; see also id.* at ¶¶ 45-47.

Plaintiff alleges that because her son was a minor when he consented to receive the text messages from Defendant, his consent was invalid and therefore the texts violated the TCPA's prohibition on sending telephone solicitations to numbers listed on the DNC Registry. Dkt. 73, ¶¶ 67-92. Based on these allegations, Plaintiff seeks to represent the following putative class:

> "Do Not Call Registry Class: For the period from four years prior to the filing of this suit until the date a class is certified, all persons in the United States who: (1) were subscribers to a telephone number; that (2) received more than one telephone call or text message from Defendant on that phone during a 12-month period; (3) whose phone numbers were listed on the Do Not Call Registry for more than 31 days at the time the calls/texts were received".

Dkt. 73, ¶ 73.

### III. LEGAL STANDARDS

#### A. Motion to Dismiss

A motion brought under Federal Rule of Civil Procedure 12(b)(6) tests whether the complaint is legally sufficient. "A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory." *Hsieh v. FCA US LLC*, 440 F. Supp. 3d 1157, 1160 (S.D. Cal. 2020) (citing *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th

---

[2] This email exchange was attached to the Initial Complaint (Dkt. 1, Ex. B) and First Amended Complaint (Dkt. 11, Ex. B). It is also directly referenced in Plaintiff's allegations. TAC ¶¶ 46, 47, 64, 64 fn. 3, 65. Accordingly, this Court incorporates the email by reference. *Gallegos v. Mercedes-Benz USA, LLC*, 2023 WL 3607279, at *3 (N.D. Cal. Mar. 6, 2023) ("The Court may *sua sponte* take judicial notice of a document or find that it is incorporated by reference into a complaint."); *see United States v. Ritchie,* 342 F.3d 903, 908 (9th Cir. 2003) (stating that a document "may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.").

Cir. 1990)). A court will "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." *Vasquez v. L.A. Cty.,* 487 F.3d 1246, 1249 (9th Cir. 2007). A motion to dismiss may be granted based on an affirmative defense when that defense is apparent from the face of the complaint. *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir.2013) (citations omitted).

### B. Motion to Strike

A court may strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Class allegations may be properly stricken at the pleadings stage pursuant to Rules 12(f) and 23 where the requirements of Rule 23 are not met. *See*, *e.g.*, *Dixon v. Monterey Fin. Servs., Inc.,* 2016 WL 4426908, at *2 (N.D. Cal. Aug. 22, 2016) (striking proposed TCPA class allegations at the pleadings stage); *Stokes v. CitiMortgage, Inc.*, 2015 WL 709201, at *4–6 (C.D. Cal. Jan. 16, 2015) (striking TCPA class allegations with prejudice that "require[d] individualized inquiries into each putative class member"). Permitting a facially uncertifiable proposed class to proceed to discovery would place an undue burden and expense upon the parties and the Court alike. *See*, *e.g.*, *Yagman v. Allianz Ins.*, 2015 WL 5553460, at *4 (C.D. Cal. May 11, 2015) (striking where allowing untenable class claims to proceed past the pleadings stage "would inject significant uncertainty as to the scope of discovery and other pre-trial proceedings"); *Langan v. United Svcs. Auto. Assoc.*, 69 F. Supp. 3d 965, 988-89 (N.D. Cal. 2014) (striking class allegations where "discovery on the class claims would not shed any additional light" on whether plaintiff could satisfy Rule 23).

## IV. DISCUSSION

### A. Plaintiff Cannot Establish a DNC Registry Violation, Thus Her Claim Should be Dismissed Under FRCP 12(b)(6).

Defendant argues that Plaintiff cannot prevail on her claims arising under the Do-Not-Call (DNC) Registry provision of the TCPA because the affirmative

defense of prior express invitation or permission ("PEIP") is apparent from the face of the TAC and documents incorporated by reference. The Court agrees.

In order, to state a claim for a violation of the TCPA's DNC Registry provision, a plaintiff must allege that the defendant: (1) initiated more than one 'telephone solicitation call' within a 12-month period; (2) to a 'residential telephone subscriber who has registered his or her telephone number' on the National DNC Registry; (3) without the prior consent of the recipient." *Gillam v. Reliance First Cap., LLC*, 2023 WL 2163775, at *2 (E.D.N.Y. Feb. 22, 2023). See 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2). The TCPA defines "telephone solicitation" as:

> the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person, but such term does not include a call or message (A) to any person with that person's prior express invitation or permission, (B) to any person with whom the caller has an established business relationship, or (C) by a tax exempt nonprofit organization.

47 U.S.C. § 227(a)(4). The TCPA's implementing regulations similarly exempt calls placed "[t]o any person with that person's prior express invitation or permission" from the definition of "telephone solicitation." 47 C.F.R. § 64.1200(f)(15)(i). Accordingly, a call does not qualify as a "telephone solicitation" under the TCPA if made to any person with that person's PEIP. 47 U.S.C. § 227(a)(4); 47 C.F.R. § 64.1200(f)(15)(i). PEIP is "evidenced by a signed, written agreement between the consumer and seller which states that the consumer agrees to be contacted by this seller and includes the telephone number to which the calls may be placed." *Hall v. Smosh Dot Com, Inc.,* 72 F.4th 983, 990 (9th Cir. 2023) (quoting 47 C.F.R. § 64.1200(c)(2)(ii)). Submission of a phone number via webform will suffice for PEIP. *Morris v. Hornet Corp.*, 2018 WL 4781273, at *6 (E.D. Tex. Sept. 14, 2018), report and recommendation adopted, 2018 WL 4773547 (E.D. Tex. Oct. 3, 2018) (finding PEIP, reasoning that "by releasing his telephone number and sharing his email address, Plaintiff consented to receiving calls from Defendant[.]").

Here, the TAC concedes that consumers generally, and Plaintiff's son specifically, provided PEIP to receive the texts in question via the smosh.com website. Specifically, the TAC alleges that "Smosh engaged in 'direct' telemarketing via text message and calls to phone numbers purportedly entered onto the website smosh.com." Dkt. 73., ¶ 9 (emphasis added). Plaintiff further alleges that Defendant "routinely sent out marketing message [sic] to phone numbers provided by minors on the basis that said minor 'consented' or 'opted in' to receive those communications." *Id.*, ¶ 12 (emphasis added). The TAC further concedes that Plaintiff's son was an authorized user of the phone and provided Defendant with: (1) the phone number that received the communications at issue in this litigation, (2) his city and state, (3) his date of birth, and (4) his email address. Dkt. 73 ¶¶ 26 n. 1, 39; Dkt. 11-2, 11-3. These allegations establish that Plaintiff voluntarily provided his number via webform for the purpose of receiving the at-issue texts from Defendant. This alone is sufficient to establish PEIP.

The TAC, however, goes further and acknowledges that Defendant provided documentation of the written agreement created when her son submitted the phone number in order to receive such communications. Dkt. 73, ¶¶ 45-47. Twice, the TAC admits that Plaintiff viewed the communications from Smosh.com's counsel as evidencing the existence of a signed, written agreement from her son. Dkt. 73, ¶¶ 65, 66.[3] These allegations and the email containing the written agreement demonstrate that even Plaintiff viewed her son as having agreed to be contacted by Defendant.

Finally, the text messages sent to Plaintiff were within the scope of consent granted by Plaintiff's son. When a person provides PEIP, that consent applies to all communications within the scope of the "transactional context" in which the number was provided. *Van Patten*, 847 F.3d at 1046. For example, providing a number in

---

[3] These concessions appear throughout Plaintiff's filings in this action. *See* Dkt. 101, p. 7; Dkt. 109, p. 6 n. 1.

the context of a gym membership agreement permits communications soliciting the individual to re-join the gym. *Id*. Here, Defendant is an "an online sketch comedy and apparel enterprise" that is "involved in sketch comedy and the creation, production and publication of online comedy videos and online retail." Dkt. 73, ¶¶ 6, 7. Plaintiff admits that her son provided the phone number to Smosh on its website. Dkt. 73, ¶¶ 14, 26 n.1, 45–48. All of the texts at issue are within the "transactional context" of this type of business because they concern the purchase of merchandise from Smosh's online store. *See* Dkt. 73,¶ 48.

None of Plaintiff's arguments resisting this conclusion are persuasive.

### 1. Plaintiff Improperly Conflates the Distinct Concepts of Prior Express Written Consent and PEIP

Plaintiff's argument that "courts have invariably treated [PEWC and PEIP] as synonymous and interchangeable" is entirely wrong. *See* Dkt. 109, p. 12. None of the cases cited by Plaintiff support this proposition. *Id.* at p. 12, 13. In *Physicians Healthsource, Inc. v. Cephalon, Inc.*, the Third Circuit found that "'express consent' and 'express invitation or permission'—as found in the TCPA—are interchangeable," for purposes of determining whether a fax was solicited. 954 F.3d 615, 618 (3d Cir. 2020). It did not conflate PEIP and Prior Express Written Consent ("PEWC"). Indeed, PEWC is found nowhere in this decision. *See id.* In *Orsatti v. Quicken Loans, Inc.*, the court denied defendant's motion to dismiss a Do-Not-Call claim because defendant "attached screenshots of the online form that purportedly evidences Plaintiff's prior express consent" to its motion. 2016 WL 7650574, at *5 (C.D. Cal. Sept. 12, 2016). The court refused to consider contrary evidence outside the pleadings since plaintiff's complaint alleged that she had "never given [defendant] her home telephone number, and has never used any services offered by them." *Id.* at *4, *6.

Here, Plaintiff's son's provision of PEIP is an undisputed fact supported by the pleadings. Plaintiff heavily relies on an opinion from the District of

1  Massachusetts, *Gaker v. Citizens Disability, LLC*, 654 F. Supp. 3d 66 (D. Mass.
2  2023), in support of her argument that PEIP can only be established by a showing
3  that any terms applicable to Defendant's messaging must have been disclosed in a
4  clear and conspicuous manner. After thoroughly reviewing the opinion, the Court
5  finds *Gaker* inapplicable and unpersuasive.

6       In *Gaker*, defendant moved for summary judgment on plaintiff's Do-Not-Call
7  claim on the grounds that plaintiff provided consent. *Id.* at 71, 72. The complaint did
8  not allege that the calls were placed via an Automated Telephone Dialing System
9  ("ATDS") or that the calls were prerecorded. *Id.* at 70. The court, nevertheless,
10 evaluated whether defendant "clearly and conspicuously" disclosed its marketing
11 terms, and whether plaintiff unambiguously manifested an intent to be contacted. *Id.*
12 at 75–77. The *Gaker* court derived the "clear and conspicuous" disclosure and
13 "unambiguous consent" requirements from *In the Matter of Rules & Regs.*
14 *Implementing the TCPA of 1991*, 27 FCC Rcd. 1830 ¶¶ 26, 32, 33 (2012) ("2012
15 Order"). 654 F. Supp. 3d at 71, 75. Read as a whole, the 2012 Order makes clear
16 that the three paragraphs the *Gaker* court relied upon to support its reasoning only
17 apply to calls placed by an ATDS or containing a prerecorded message. *See* 27 FCC
18 Rcd. at 1838, ¶ 2, ("The protections we adopt will protect consumers from unwanted
19 autodialed or prerecorded telemarketing calls, also known as 'telemarketing
20 robocalls[.]'"), ¶ 20 ("[W]e require prior express written consent for all telephone
21 calls using an automatic telephone dialing system or a prerecorded voice to deliver a
22 telemarketing message to wireless numbers and residential lines.").

23      The *Gaker* court's reliance on the same three paragraphs—26, 32 and 33—
24 from the 2012 Order is misplaced. A footnote appended to paragraph 26 clearly
25 states "in any case where a consumer asserts that he or she has not provided written
26 consent to receive robocalls, the telemarketer must demonstrate that the consumer
27 actually provided such consent to avoid liability." 27 FCC Rcd. at 1840, ¶ 26 n. 68.
28 Paragraph 32 of the 2012 Order does not reference consent requirements under the

TCPA, but instead provides an overview of how written consent is determined under the Telemarketing Sales Rule, and applies only to prerecorded message calls. 27 FCC Rcd. at 1843-44, ¶ 32; 16 C.F.R. § 310.4(b)(v)(A) (exempting callers placing "any outbound telephone call that delivers a prerecorded message" from liability with the recipient's written agreement). Lastly, paragraph 33 of the 2012 Order confirms the necessary level of consent for robocalls, but says nothing of other types of calls. 27 F.C.C. Rcd. at 1844, ¶ 33 (emphasis added) ("[A] consumer's written consent *to receive telemarketing robocalls* must be signed and be sufficient to show that the consumer: (1) received 'clear and conspicuous disclosure' of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates."). The 2012 Order has no application in this case since the calls at issue are not robocalls or prerecorded message calls. *See* Dkt. 73.

Plaintiff's reliance on *Berman v. Freedom Fin. Network*, LLC, 30 F.4th 849 (9th Cir. 2022), is also misplaced. *See* Dkt. 109, p. 9–12. *Berman* was focused solely on the enforceability of an arbitration provision within a linked webform agreement, and did not address whether a consumer's provision of a number to a caller is sufficient to satisfy PEIP. *See id.* Moreover, Plaintiff has presented no authority within the Ninth Circuit where the *Berman* analysis was applied to PEIP under the TCPA. This Court declines Plaintiff's invitation to be the first.

### 2. Plaintiff's Arguments That PEIP Can Only be Provided By the Subscriber or an Adult Are Unsupported

Plaintiff argues that even if her son provided his consent to be contacted at the phone number, of which he was an authorized user, such consent would be ineffective because "a 'subscriber' can only be the adult who pays the phone bill, or an adult authorized to enter contracts on behalf of the subscriber." Dkt. 109, p. 14.

Plaintiff provides no authority for the novel proposition that the TCPA imposes liability unless a telemarketer undertakes the massive burden of confirming the person who gave consent to be contacted is the subscriber of the phone number at issue. Indeed, the text of TCPA and its implementing regulations do not mandate that PEIP can only be obtained from the subscriber. The definition of "telephone solicitation" specifically exempts "a call or message: . . . (i) To any person with that person's prior express invitation or permission." 47 C.F.R. § 64.1200(f)(15); *see also* 47 U.S.C. § 227(a)(4). As recognized when the Ninth Circuit addressed Plaintiff's claims, "The Do-Not-Call Registry lists numbers, not names. A telemarketer ordinarily does not know if consent to receive telephone messages comes from the subscriber of a particular number or some other user." *Hall*, 72 F.4th at 990 n.8.

Neither the TCPA, its implementing regulations, nor guidance from the Federal Communications Commission provide that minors are incapable of providing consent to be contacted by telephone or otherwise set an age limit on such an ability. Indeed, courts have allowed minors to pursue claims for violations of the TCPA, including where a parent was a subscriber and the child was a user. *See*, *e.g.*, *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1065 (7th Cir. 2018) (allowing minor's claim under the TCPA to proceed in court after reversing district court's grant of a motion to compel arbitration); *Breslow v. Wells Fargo Bank, N.A.*, 755 F.3d 1265, 1266 (11th Cir. 2014) (affirming judgment for plaintiff in action brought on behalf of minor child who received illegal text messages); *AG v. S. Bay Dreams Coop., Inc.*, 2018 WL 2002370 (S.D. Cal. Apr. 30, 2018), *report and recommendation adopted*, 2018 WL 5099393 (S.D. Cal. Aug. 13, 2018) (approving settlement resolving TCPA claims brought by minor alleging receipt of unauthorized automated texts). It would create an unmanageable situation if minors were allowed to bring actions under the TCPA for being contacted without their consent, but at the same time be categorically unable to give consent.

Moreover, both Texas and California state law provide that a minor has capacity to consent to contract. *See*, *e.g.*, *Dairyland Cty. Mut. Ins. Co. of Texas v. Roman*, 498 S.W.2d 154, 158 (Tex. 1973) ("While the contract of a minor is not void, it is voidable at the election of the minor. This means that the minor may set aside the entire contract at his option, but he is not entitled to enforce portions that are favorable to him and at the same time disaffirm other provisions that he finds burdensome."); *Lopez v. Kmart Corp.*, 2015 WL 2062606, at *4 (N.D. Cal. May 4, 2015) ("California law plainly provides that a minor has the capacity to contract, with the exception of those contracts specifically prohibited.") (citing Cal. Civ. Code § 1557 and Cal. Family Code § 6700); *C.M.D. v. Facebook, Inc.*, 2014 WL 1266291, at *3 (N.D. Cal. Mar. 26, 2014), *aff'd sub nom. C.M.D. ex rel. De Young v. Facebook, Inc.*, 621 F. App'x 488 (9th Cir. 2015) ("[T]he basic presumption is that minors do have the power to enter into binding contracts."). Accordingly, a minor has the same capacity as any other phone user to agree to receive text messages at a cell number of which they are a user.

Moreover, sound policy considerations support this result. The FCC evaluated a similar scenario to the one presented by this case when it issued *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961 (2015) ("2015 Order"). The FCC's 2015 Order confirmed that "the 'called party' is the subscriber, i.e., the consumer assigned the telephone number dialed and billed for the call, or the non-subscriber customary user of a telephone number included in a family or business calling plan. Both such individuals can give prior express consent to be called at that number." *Id.* at 8001, ¶ 73. Plaintiff argues that the 2015 Order is inapplicable because "[t]he question is [before this court is] whether [sic] the boundaries and expectations of **subscribers** who register their phone numbers on the Do-Not-Call Registry, under section 227(c) - **not a 'called party' as defined by** section 227(b) of the TCPA." Dkt. 109, p. 19 (emphasis in the original). Even if the FCC was focused on consent in the automated calling context,

Plaintiff offers no reason the FCC's 2015 Order should not be used as a guidepost here. The FCC clearly contemplated the exact phone-sharing scenario before the Court here when it opined that:

> The record indicates that it is reasonable for callers to rely on customary users, such as a close relative on a subscriber's family calling plan or an employee on a company's business calling plan, because the subscriber will generally have allowed such customary users to control the calling to and from a particular number under the plan, including granting consent to receive robocalls. The caller in this situation cannot reasonably be expected to divine that the consenting person is not the subscriber or to then contact the subscriber to receive additional consent.

30 F.C.C. Rcd. at 8001-002, ¶ 75. A caller sending a non-automated text can no better "divine that the consenting person is not the subscriber" than someone making a robocall. It would also defy common sense that the FCC would allow a customary user of a phone to provide consent to receive autodialed calls and prerecorded messages, uniformly considered to be the most highly offensive and intrusive telemarketing, but not allow those customary users to agree to receive messages notwithstanding their number's registration on the Do-Not-Call Registry.

As such, Defendant's motion to dismiss the TAC on the grounds that the affirmative defense of PEIP is apparent from the face of the TAC is **GRANTED**.

### B.   Plaintiff's Class Allegations Fail on the Face of the TAC

Ninth Circuit precedent permits striking class allegations at the pleading stage when it is clear that a class action is "not a superior method of resolving the controversy." See *Kamm v. California City Dev. Co.*, 509 F.2d 205, 212 (9th Cir. 1975). Where, as here, "the defendant advances a legal argument based on the pleadings, discovery is not necessary for the court to evaluate whether a class action may be maintained. Particularly given that Rule 23(c)(1)(A) instructs courts to determine whether a class may be certified '[a]t an early practicable time,' courts may—and should—address the plaintiff's class allegations when the pleadings are facially defective and definitively establish that a class action cannot be

maintained." *Wright v. Fam. Dollar, Inc.*, 2010 WL 4962838, at *1 (N.D. Ill. Nov. 30, 2010) (striking class claims at the pleading stage). It is readily apparent on the face of the TAC that Plaintiff cannot certify a class.

### 1. Plaintiff's Claims Are Atypical

For a class action to be certified, the named plaintiff must be able to demonstrate that their "claims and defenses are typical" and they can adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(3); *Hanon v. Dataproducts Crop.*, 976 F.2d 497, 508 (9th Cir. 1992). The test for typicality is whether the named plaintiff's claims arise from the "same or similar injury" as other members of the class and that "other members of the class have been injured by the same course of conduct." *Id.* at 508 (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)). A class may not be certified "where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Id.* (holding that plaintiff failed to satisfy typicality requirement of Rule 23(a)(2) where plaintiff's "unique background and factual situation require him to prepare to meet defenses that are not typical of the defenses which may be raised against other members of the proposed class"); *Koos v. First Nat. Bank of Peoria*, 496 F.2d 1162, 1164 (7th Cir. 1974) ("Where it is predictable that a major focus of the litigation will be on an arguable defense unique to the named plaintiff or a small subclass, then the named plaintiff is not a proper class representative.") The concern is that class members' interests will be negatively impacted if the named plaintiff's advocacy is consumed by issues relevant only to their specific claims. *See Hanon*, 976 F.2d at 508 ("We agree that a named plaintiff's motion for class certification should not be granted if 'there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.'") (citation omitted).

Plaintiff seeks to represent a class of "*all* persons . . . who (1) were subscribers to a telephone number; that (2) received more than one telephone call or text message from Defendant on that phone during a 12-month period; (3) whose

phone numbers were listed on the Do Not Call Registry for more than 31 days at the time the calls/texts were received." *Id.*, ¶ 73 (emphasis added). Plaintiff's claim is atypical for this putative class because (1) Plaintiff shared the phone with another person, (2) that person (not Plaintiff) provided prior express invitation or permission to receive the communications at issue, and (3) that person was a minor. Dkt. 73 ¶¶ 26 n.1, 39, 45, 46, 64, 65. These merits issues and defenses are not capable of being litigated on a class basis. *Banarji v. Wilshire Consumer Cap., LLC*, 2016 WL 595323 (S.D. Cal. Feb. 12, 2016), is instructive. The plaintiff in *Banarji.* brought TCPA claims against a bank for calls placed to her father, who had supplied Plaintiff's number as his point of contact with the bank rather than his own, after the father defaulted on a debt. *Id.* Defendant moved to strike the class allegations, or, in the alternative, to deny class certification challenging "[p]laintiffs [sic] ability to meet the typicality requirement in Rule 23(a)(3)." *Id.* at *3. The court granted the motion to deny class certification, holding that "Plaintiff's case is unique to herself and perhaps a small subset of the class . . . As such, the majority of the proposed class may suffer as Plaintiff will be engrossed with disputing [defendant]'s arguments regarding Plaintiff's individual case." *Id.* at *3. The court found the motion ripe for adjudication at an early stage in the proceedings since "the evidence [p]laintiff seeks to discover will not affect the uniqueness of [p]laintiff's case." *Id.*

The TAC and arguments raised in Plaintiff's Opposition make clear that Plaintiff is subject to unique defenses, rendering her an atypical representative of the proposed class. Plaintiff's circumstances here echo those of the atypical class representative in *Banarji*. Plaintiff's son, a third-party customary user of the telephone provided PEIP to be contacted at Plaintiff's number. Dkt. 73, ¶¶ 8, 9, 12, 26 n. 1, 39, 45–47, 55–66. Courts in the Ninth Circuit regularly determine that plaintiffs subject to a unique defense of affirmative consent are atypical. *See, e.g.*, *Bridge v. Credit One Fin.*, 294 F. Supp. 3d 1019, 1034 (D. Nev. 2018) (denying class certification on typicality grounds where defendant argued plaintiff consented

to receiving calls meant for his mother when he associated his phone number with his mother's delinquent account); *Sapan v. Veritas Funding, LLC*, 2023 WL 6370223, at *4 (C.D. Cal. July 28, 2023) (denying motion for class certification where plaintiff appeared to have invited the calls, since "even if, as he alleges, Plaintiff's words and conduct did not indicate consent for Defendant to contact him, Defendant will understandably spend substantial time at trial eliciting testimony and arguing that he did, likely to the class's detriment.") (internal citations and quotations omitted). This action will be spent litigating whether Plaintiff's son, a regular user of the phone, provided Defendant with valid PEIP to text the telephone number. Accordingly, based on the facts alleged in the TAC, Plaintiff is subject to unique defenses, rendering her claims atypical and undermining her ability to serve as an adequate class representative. The class allegations should be stricken to avoid a waste of judicial resources.

### 2.  Individualized Inquiries Will Predominate.

Plaintiff also cannot establish commonality because individualized issues predominate. Fed. R. Civ. P. 23(a)(2); *Connelly v. Hilton Grand Vacations Co., LLC,* 294 F.R.D. 574, 578 (S.D. Cal. 2013). Plaintiff's own atypicality is evidence that this assessment would require individualized inquiries *even for those numbers that provided prior express invitation or permission to be contacted*. Plaintiff does not dispute that her child, an authorized and customary user of the phone, provided Defendant with Plaintiff's number and permission to be contacted at that number. Dkt. 73 ¶¶ 12, 14, 26 n. 1, 38, 40, 44, 45–47, 64 n. 3; Dkt. 10 ¶ 41, Dkt. 11 Exs. A–C. This creates a circumstance where the issues and defenses could vary between class members. Specifically, further inquiry would need to be made into at least the following issues: (1) whether a minor provided the number, (2) whether the minor had their parent's authorization to use the number, (3) whether the agreement to be contacted was disaffirmed, and (4) whether the parent or child was the primary user of the telephone. This is untenable, unmanageable, and unreasonable, and renders

this case unsuitable for class treatment. *See Tomaszewski v. Circle K Stores Inc.*, 2021 WL 2661190, at *3 (D. Ariz. Jan. 12, 2021) (striking TCPA class claims at the pleading stage, holding that, "[a]llowing the class allegations as currently proposed, would be 'palpably unfair to the Defendant' because the Defendant would be required to perform an inquiry in order to ascertain why each individual was messaged and whether Defendant would claim that consent was obtained for each recipient in the same manner as the named Plaintiffs.").

Plaintiff's putative class definition fails on the face of the pleadings. As such, Plaintiff's class claims and accompanying class allegations are **STRICKEN**.

## V. THE TAC IS DISMISSED WITH PREJUDICE

Plaintiff has had four opportunities to plead sufficient facts to establish her claim. Furthermore, as the allegations in the TAC demonstrate that the texts were sent with PEIP, Plaintiff cannot amend her pleading to state a claim without fully retracting or contradicting these allegations. Accordingly, this Court **GRANTS** Defendant's Motion to Dismiss with prejudice. Additionally, because the class is uncertifiable on the face of the complaint, this Court **GRANTS** Defendant's Motion to Strike the Class Allegations.